[Civ. No. 12183.    First Dist., Div. Two.    Jan. 19, 1943.]

YOKOHAMA SPECIE BANK, LTD. (a Banking Corporation), Plaintiff; GEORGE J. KNOX, as Superintendent of Banks, etc. (Substituted Plaintiff), Appellant, v. UNOSUKE HIGASHI et al., Respondents.

Stanton & Stanton for Appellant.

Argyll Campbell for Respondents.

DOOLING, J. pro tem.—This action was brought by the Yokohama Specie Bank, Ltd., to foreclose a chattel mortgage originally given to the bank in 1931 by one Higashi, and subsequently renewed. The city of Monterey was joined as a defendant and filed a cross-complaint to quiet title to a portion of the property sought to be foreclosed. From a judgment quieting the title of the city of Monterey to a building supported by piles driven into the land under Monterey Bay and a refrigerating plant and attachments installed in said

building the plaintiff appealed. Since the outbreak of the war with Japan the State Superintendent of Banks has been substituted herein as plaintiff and appellant.

It was stipulated by the parties that about 1915 a lease to certain frontage on the city wharf which extends into the waters of Monterey Bay was given by the city of Monterey to one Ferrante; that Ferrante put down piles on the land under the waters of the bay adjacent to this wharf frontage and constructed the building in question thereon; that subsequently Standard Fish Co. had a lease to the same wharf frontage and occupied the building; that about 1928 or 1929 Higashi went in under the lease of the Standard Fish Co. after which he secured a lease to the same wharf frontage himself from the city of Monterey and that he paid Standard Fish Co. $6,000 or $6,500 for its interest in the building; that Higashi placed the refrigerator in the building at a cost of $10,000; and that the refrigerator with its attachments is built into the building and could not be removed without injury to the building. It was further stipulated that the city of Monterey brought an ejectment suit against Higashi and Higashi was ejected as a tenant of the city in September, 1939, owing the city rent in the sum of $1,500 or thereabouts. The city of Monterey pleaded that the lands whereon the building is located were granted to the city of Monterey by the Legislature of California in 1919, and plaintiff stipulated to the truth of this allegation.

Since 1867 the city of Monterey has owned the lands under the waters of Monterey Bay within its corporate limits to a depth of twenty feet at low tide. (Stats. 1867, p. 202.) In 1919 the lands between the twenty-foot and sixty-foot depths were granted to the city by the state *"provided,* that the rights of all persons, if any exist, under any title derived from said State of California, in and to any part of said property and premises hereby ceded and granted, be and the same are hereby reserved from the operation of this act." (Stats. 1919, p. 1359.)

It seems clear, and appellant so asserts, that the lands upon which the building here in question is constructed lie between the twenty-foot and sixty-foot depths granted to the city in 1919. It is appellant's position "that the building was constructed adjacent to the wharf under permit express or implied from the state" and that title to it therefore did not pass to the city of Monterey under the grant from the state in 1919, but was reserved by the proviso to the private owner.

The weakness of this argument lies in the statement quoted from the brief "that the building was constructed . . . under permit express or implied from the state." Appellant points to nothing to support this assertion either in law or in the transcript. All that appears on the subject is the stipulation that in 1915 Ferrante put down piles and constructed the building thereon. No statutory authority in the city of Monterey to grant Ferrante permission to place a structure on the floor of the bay below the twenty-foot depth on lands then belonging to the state is shown. No express permit from the state was proved, and no facts which would support a finding of any implied permit from the state, assuming, what we gravely doubt, that the sovereign state could be bound by a permit by implication only. The building so constructed without license upon the tide lands of the state became at once the property of the state. It was said in *Oakland* v. *E. K. Wood Lumber Co.*, 211 Cal. 16, 23 [292 P. 1076, 80 A.L.R. 379]:

"The erection of a wharf, dock or other construction over tide lands by individuals without license is an encroachment upon the sovereignty or a purpresture which belongs to the state as the owner of the soil to which it is affixed."

As authority for this statement the court cites: *People* v. *Davidson*, 30 Cal. 379; *Dana* v. *Jackson Street Wharf Co.*, 31 Cal. 118 [89 Am.Dec. 164]; *Taylor* v. *Underhill*, 40 Cal. 471; *Shively* v. *Bowlby*, 152 U.S. 1 [14 S.Ct. 548, 38 L.Ed. 331]; *Weber* v. *State Harbor Commrs.*, 85 U.S. (18 Wall.) 57 [21 L.Ed 798]; 26 Cal.Jur., pp. 301, 311, 315 et seq., 590. We conclude that so far as the building is concerned it belonged to the state from the time of its construction and became the property of the city of Monterey by the statutory grant of 1919.

There is nothing in *Santa Cruz* v. *Southern Pac. R. R. Co.*, 163 Cal. 538 [126 P. 362] inconsistent with this conclusion. That case dealt with a public wharf extending across the strip between high and low tide, title to which strip had been granted to the town of Santa Cruz (Stats. 1871-2, p. 472) with the following reservation: "nothing herein contained shall in any manner be construed so as to prevent the construction and maintenance of wharves over, in, and through said lands by authority of the laws of the State of California." The court in that case said at page 549, speaking of the wharf in question:

"It was erected under the authority of the state. Hence,

it was within the reservation in the special act and it is the property of the state, and the state alone has the right of possession and use and the right to maintain an action to recover possession.''

There was no similar reservation in the grant to Monterey by the act of 1919. Indeed the two cases are completely dissimilar. In the case before us a structure was placed by an individual without license upon the floor of the bay which was then owned by the state, and subsequently the state conveyed all of its title thereto to the city. In the Santa Cruz case the state first conveyed the strip between high and low tide to the city reserving the right to authorize the construction and maintenance of wharves across the strip so conveyed and the wharf was thereafter constructed across this strip by authority of the state and pursuant to the reservation in the grant. The question in the Santa Cruz case was whether upon the termination of the wharf franchise, title in the structure vested in the city or the state in view of the reservation of the right to the state to authorize wharfing privileges in the grant from the state to the city. No such question is involved in the case here presented.

As to the refrigerating system with its attachments, in addition to the stipulation that it is built into the building and could not be removed without injury to the building, there was testimony, uncontradicted, that it was built into the building, that pipes leading to the refrigeration rooms pass through various parts of the building, that the refrigerating rooms have concrete floors over wood, that in certain places columns have been removed which supported the upper floors and the roof, and that a part of the superstructure of the building rests upon the top of refrigerating rooms and is supported by them. It thus appears without conflict that after Higashi occupied the building which we have determined was then the property of the city he installed in the building a refrigerating system which became a structural part of the building itself. Subsequently he executed the chattel mortgage by which he purported to mortgage this refrigerating system to the Yokohama Specie Bank, Ltd.

It is appellant's claim that the refrigerating system constituted a trade fixture and hence was personal property subject to removal by the tenant and subject to the lien of the chattel mortgage given by him. It is respondent's position that it became a part of the realty, was at all times after its installation respondent's property, and therefore not subject

to the chattel mortgage. There was no evidence of any agreement between the lessor and lessee as to the character of this installation (12 Cal.Jur. 580) and its character must therefore be determined by the rules established by Civil Code, section 1019:

"A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

We are satisfied that under the facts shown by the stipulation and the evidence above set out the refrigerating system by the manner in which it was affixed became an integral part of the building within the meaning of the quoted code section. (*Alden* v. *Mayfield*, 163 Cal. 793 [127 P. 44, Ann.Cas. 1914A, 258, 41 L.R.A. N.S. 1022] ; *Gordon* v. *Cohn*, 220 Cal. 193 [30 P.2d 19] ; *Etienne* v. *Millbrae G. & C. Club*, 27 Cal.App.2d 452 [81 P.2d 245] ; *Broadway Improvement etc. Co.* v. *Tumansky*, 2 Cal.2d 465 [41 P.2d 553] ; *Frick* v. *Frigidaire Corp.*, 119 Cal.App. 707 [7 P.2d 321].) The single fact that it had been so incorporated into the building by the removal of columns supporting a part of the building and the substitution of the refrigerating rooms in their place as supports of that part of the building clearly compels such conclusion.

The cases most strongly relied upon by appellant are readily distinguishable. In *Murr* v. *Cohn*, 87 Cal.App. 478 [262 P. 768], a service station building and pumps and a tank buried in the ground by a lessee of a vacant lot where the lease was for service station purposes, were held to be trade fixtures removable by the tenant. The building and pumps merely rested upon concrete blocks placed upon the surface. As to the tank this court said at pages 480-481:

"It never became a part of the defendant's realty [citing cases], when it is considered that before the execution of the lease the lots were vacant, that at the time the lease was executed the defendant was informed to what use the plaintiffs intended to put the property, and that upon the tank being removed, the soil can be dumped back into the hole in such a manner and to such an extent that there will be no injury whatever to the vacant lot."

In *Goldberg* v. *Stanton*, 84 Cal.App. 665 [258 P. 417], a

lessee installed a refrigerator in a building in the following fashion (quoting from pp. 666-667):

"No part of the refrigerator was physically attached by nails, bolts, screws, or otherwise to any part of the building excepting that on each of the sides of the refrigerator . . . a strip of quarter-round molding was tacked to the ceiling and to the refrigerator, 'making a neat looking job inside the building.' "

The court said at page 667:

"In the instant case it is apparent that in no just sense could the flimsy attachment of the refrigerator to the ceiling of the storeroom by means of the quarter-round molding be considered as 'permanent' within the meaning of the language contained in section 660 of the Civil Code."

Through an apparent inadvertence the trial court failed to make findings on the affirmative allegations of the cross-complaint. Under the uncontradicted facts we can remedy that defect in this court. (*Kirk* v. *Culley,* 202 Cal. 501 [261 P. 994]; *First Nat. F. Corp.* v. *Five-O Drilling Co.,* 209 Cal. 569 [289 P. 844]; *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398].)

The findings of the trial court are amended by adding thereto a finding "that all of the allegations of the cross-complaint of cross-complainant the City of Monterey are true."

The judgment appealed from is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.