[Civ. No. 36373. Second Dist., Div. Two. Dec. 3, 1970.]

WEISZ TRUCKING CO., INC., et al., Plaintiffs and Appellants, v. EMIL R. WOHL CONSTRUCTION, Defendant and Respondent.

## COUNSEL

Donald F. Yokaitis and Olin A. Schneyer for Plaintiffs and Appellants.

Hastings, Blanchard & Hastings and James H. Hastings for Defendant and Respondent.

## OPINION

**HERNDON, Acting P. J.**—Plaintiffs Weisz Trucking Co., Inc., and John Weisz, Jr., appeal from the adverse judgment in this action for breach of contract brought against defendant Wohl Construction.

Defendant was the prime contractor on a large construction project. The subcontract sued upon required plaintiffs to perform specified work for which defendant agreed to pay them the sum of $168,000. This contract contained the following provision: "The subcontractor shall furnish, if requested, a corporate surety contract bond, in an amount equal to the subcontract price. Bond to be written in a form and by a company acceptable to the contractor, who will pay the premium for the bond."

It is undisputed that defendant terminated the contract prior to the commencement of performance thereunder upon the asserted ground that the performance bond tendered by plaintiffs was unacceptable in that defendant deemed the financial rating of the surety on the tendered bond to be unsatisfactory.

The determinative issue on this appeal is a very narrow one, namely, did the trial court err in failing to make a finding upon a material issue of fact when it failed to comply with plaintiffs' request for a specific finding upon the issue as to whether or not defendant acted reasonably and in good faith in rejecting the performance bond?

Plaintiffs' version of the facts is stated substantially as follows in their opening brief:

Plaintiffs and defendant Wohl Construction executed, on or about August 30, 1967, a subcontract construction agreement dated August 25, 1967, in the amount of $168,000. The work called for by the subcontract involved the second phase of the construction work to be performed by Wohl Construction pursuant to its prime contract with United Airlines for the overnight parking facility at the Los Angeles International Airport.

By written notice dated September 7, 1967, Wohl Construction demanded of Weisz Trucking a corporate surety bond on the referenced subcontract. At approximately 5 p.m. on September 21, 1967, Mr. Jack Potashnik, acting on behalf of plaintiffs, did tender and deliver to Wohl Construction a corporate surety bond in the amount of the subcontract and on a form furnished by the insurance broker for Wohl Construction. The bond was written by United Bonding Insurance Company in the amount of $168,000. Mr. Jack Potashnik met personally with Mr. Emil R. Wohl, the President of Wohl Construction, and handed him the bond at the time and on the date indicated. Emil R. Wohl told Mr. Jack Potash-

nik the bond wasn't any good and would not be acceptable and refused to accept the corporate surety bond tendered to Wohl Construction. The sole reason for rejection stated by Emil Wohl was "[w]e wanted a bonding company that was rated for $500,000 on the U. S. Treasury Qualification List." Wohl Construction did, on September 22, 1967, unilaterally terminate the subcontract of August 25, 1967.

Defendant's version of the facts is stated substantially as follows in its responding brief: The subcontract between plaintiffs and defendants was signed in the office of defendant's president by both parties on August 30, 1967. Several weeks prior to the signing of the contract, Mr. Weisz, president of plaintiff corporation, was told by a representative of defendant that a financial statement of the corporation would be required in order to determine if a bond would be requested by defendant. On August 30, when the contract was signed, Mr. Weisz was again asked by Mr. Wohl to furnish a corporate financial statement. On September 7, 1967, defendant, having not received the financial statement of plaintiff corporation, did serve the written notice on plaintiffs that a surety bond would be required. A few days later, on September 11, 1967, defendant was advised by a bond broker that a bond would be issued on behalf of plaintiffs for said job by Maryland Casualty Company. The Maryland Casualty Company bond was never submitted and at approximately 5 p.m. on Thursday, September 21, 1967, with only one working day left and two weekend days before plaintiff corporation was to commence its work on the job, it furnished a bond written by United Bonding Insurance Company in the amount of $168,000. Mr. Emil R. Wohl, president of defendant company, informed Mr. Jack Potashnik, vice president of plaintiff corporation, that said company had a Treasury rating of only $61,000 and that it was not acceptable. Plaintiffs had been told prior to said meeting by Mr. Larson, an officer of defendant, that the bonding company writing the bond for this job would be required to have a Treasury rating of $500,000. Plaintiffs were given until 4 p.m. the following day (Friday) to obtain a bond from an acceptable company. They could not and defendant cancelled the contract in order that another contractor could start the job according to the time schedule.

At the trial both parties introduced evidence oral and documentary relating to the various communications between the parties with respect to the performance bond, the financial rating of the surety on the bond tendered and other circumstances relating to the sufficiency of the bond.

It is unnecessary to recite the evidence in greater detail. It suffices to state our conclusion that either an affirmative or a negative finding on the

issue as to whether or not defendant acted reasonably and in good faith in rejecting the bond would be supported by substantial evidence.

When the trial court announced its intended decision in favor of defendant, plaintiffs filed a written request for findings of fact and conclusions of law. The proposed findings of fact and conclusions of law were prepared and submitted by defendant pursuant to rule 232(d) of the California Rules of Court, whereupon plaintiffs filed written objections and request for special findings. Among the special findings requested by plaintiffs were findings responsive to questions whether defendant had acted in good faith and whether it had acted reasonably in rejecting the performance bond tendered.

The trial court refused to make the requested special findings. The pertinent findings as submitted by defendant and signed by the court are as follows: "III. Pursuant to said provision of the contract, defendants requested plaintiffs to furnish a surety bond written in a form and by a company acceptable to the defendants. IV. Plaintiffs failed to submit to the defendants a bond by a company acceptable to the defendants. Defendants, as a result thereof, cancelled the contract with plaintiffs." The conclusions of law are: "I. That the provision in the contract requiring plaintiffs to provide a surety bond acceptable to the defendants was a material part of the contract and, in effect, a condition precedent to be performed by plaintiffs before plaintiffs could accept the benefits of the contract. II. That plaintiffs' failure to submit a surety bond acceptable to defendants was a breach of said contract by plaintiffs, entitling defendants to cancel said contract."

The provision of the instant contract requiring plaintiffs to provide a bond "in a form and by a company acceptable to the Contractor" is one of a class characterized in the decisions and by the text writers as "satisfaction clauses." Reference to the decision of our Supreme Court in *Mattei* v. *Hopper,* 51 Cal.2d 119 [330 P.2d 625], is sufficient to indicate the infinite variety of satisfaction clauses which the courts have considered. The central issue in that case involved a provision whereby the seller's agreement to sell land was conditioned upon the buyers obtaining leases satisfactory to the seller. In classifying clauses of this kind and the tests to be applied in determining whether or not their requirements have been satisfactorily fulfilled, the Supreme Court used the following language (pp. 122-123): "While contracts making the duty of performance of one of the parties conditional upon his satisfaction would seem to give him wide latitude in avoiding any obligation and thus present serious consideration problems, such 'satisfaction' clauses have been given effect. They have been divided into two primary categories and have been accorded

different treatment on that basis. First, in those contracts where the condition calls for satisfaction as to commercial value or quality, operative fitness, or mechanical utility, dissatisfaction cannot be claimed arbitrarily, unreasonably, or capriciously (*Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875, 882-883 [306 P.2d 783]), and the standard of a reasonable person is used in determining whether satisfaction has been received. (*Thomas Haverty Co.* v. *Jones,* 185 Cal. 285, 296 [197 P. 105]; *Fielding & Shepley, Inc.* v. *Dow,* 72 Cal.App.2d 18, 21 [163 P.2d 908]; *Fruit Growers Supply Co.* v. *Goss,* 4 Cal.App.2d 651, 654 [41 P.2d 357]; *Scott Co., Inc.* v. *Rolkin,* 133 Cal.App. 209, 212 [23 P.2d 1065]; *Melton* v. *Story,* 113 Cal.App. 609, 612-614 [298 P. 1032]; *Jones-McLaughlin, Inc.* v. *Kelly,* 100 Cal.App. 315, 321-325 [279 P. 1076]; *Bruner* v. *Hegyi,* 42 Cal.App. 97, 99 [183 P. 369].) Of the cited cases, two have expressly rejected the arguments that such clauses either rendered the contracts illusory (*Collins* v. *Vickter Manor, Inc., supra*) or deprive the promises of their mutuality of obligation. (*Melton* v. *Story, supra.*) The remaining cases tacitly assumed the creation of a valid contract. However, it would seem that the factors involved in determining whether a lease is satisfactory to the lessor are too numerous and varied to permit the application of a reasonable man standard as envisioned by this line of cases. Illustrative of some of the factors which would have to be considered in this case are the duration of the leases, their provisions for renewal options, if any, their covenants and restrictions, the amounts of the rentals, the financial responsibility of the lessees, and the character of the lessees' businesses.

"This multiplicity of factors which must be considered in evaluating a lease shows that this case more appropriately falls within the second line of authorities dealing with 'satisfaction' clauses, being those involving fancy, taste, or judgment. Where the question is one of judgment, the promisor's determination that he is not satisfied, when made in good faith, has been held to be a defense to an action on the contract. [Citations.]"

In *Call* v. *Alcan Pacific Co.,* 251 Cal.App.2d 442, 447 [59 Cal.Rptr. 763], the subcontractor was required to supply skilled workmen to the satisfaction of the general contractor. The Court of Appeal did not apply a specific test, but stated, "A provision requiring performance to the promisee's satisfaction does not make the contract illusory since he cannot act arbitrarily; rather, according to the character of the contract, he will be held either to the standard of satisfaction in good faith or the standard of a reasonable person."

In *Lyon* v. *Giannoni,* 168 Cal.App.2d 336, 339 [335 P.2d 609], a land sale contract was executed in which the buyers were given the right to terminate the contract in the event certain tests for available water were

not satisfactory. The buyers never exercised their right to test for water, but simply terminated the contract. The court upheld the contract, stating: "A contractual provision for performance to the satisfaction of one of the parties ordinarily calls for such performance as would be satisfactory to a reasonable person. [Citation.]"

The contract in *San Bernardino Valley Water Dev. Co. v. San Bernardino Valley Mun. Water Dist.,* 236 Cal.App.2d 238, 252-253 [45 Cal. Rptr. 793], required the promisee to produce satisfactory proof that certain well water was not from a certain watershed. The court stated that the objective test of satisfaction, namely that which would satisfy the reasonable man, was applicable. " '. . . where the question is whether an agreed performance will satisfy a requirement of commercial value or quality, operative fitness or mechanical ability, the party to whom such performance is tendered is not justified in claiming arbitrarily, unreasonably, or capriciously that he is not satisfied, in order to evade liability. [Citations.]' "

In *Bowie v. Bankers Life Co.,* 105 F.2d 806, 808, the satisfaction clause required that for insurance reinstatement after default, the insured must produce "[e]vidence of insurability satisfactory to the company." The court referred to the issue as follows: "Evidence of insurability satisfactory to the company, as therein used, means evidence which would satisfy a reasonable person experienced in the life insurance business that the insured was in an insurable condition. . . . The company was not clothed with power to act arbitrarily or capriciously in determining whether the the evidence of insurability was satisfactory or should be approved. It could not be governed by fancy or whim in deciding such matters. It was required to consider the evidence in light of common sense and reason; and when viewed in that manner, it was the further duty of the company to regard it as satisfactory and approve it if no valid objection existed in respect to its form or substance. . . ."

The foregoing are representative of a host of decisions dealing with satisfaction clauses. The conclusion to be drawn from these decisions is that where the contract calls for satisfaction as to commercial value or quality or sufficiency which can be evaluated objectively, the standard of a reasonable person should be used in determining whether or not satisfaction has been received. The authorities are uniform in holding that a party to such a contract may not arbitrarily and capriciously repudiate the contract by claiming dissatisfaction. (Rest., Contracts (1932) California Anno., § 265; 3A Corbin, Contracts (1960), § 646, pp. 93-94; 5 Williston, Contracts (1961), §§ 675A and B, pp. 189-218.)

Neither party has cited a case dealing with a satisfaction clause in a

contract conditioned upon the furnishing of a surety bond acceptable to one of the contracting parties and our research has produced none. Therefore, in classifying the clause here involved we have resorted to the cited authorities and have considered their classification of analogous contractual provisions. ■ By this process we have reached the conclusion that the sufficiency of the performance bond tendered in this case can and should be determined by the application of an objective test of reasonableness.

■ We hold that plaintiffs were entitled to a specific finding on the issue as to whether or not defendant acted reasonably in rejecting the the performance bond tendered in this case. We reject respondent's contentions (1) that the findings actually made were sufficient to indicate a determination of this issue; (2) that a finding on this issue necessarily would have been adverse to plaintiffs; and (3) that it would be appropriate for this appellate court to make the missing finding.

As we have indicated, plaintiffs made a special request for a finding on the issue as to the reasonableness of defendant's action. ■ As stated in *Anderson* v. *Southern Pac. Co.,* 264 Cal.App.2d 230, 234-235 [70 Cal. Rptr. 389]: "Where findings upon an issue are requested but not made, an appellate court cannot conclude from the record that the trial court decided such issues against the complaining party. Code of Civil Procedure section 634 provides that where findings are requested on a pertinent issue, but none are made, an appellate court may not infer that 'the trial court found in favor of the prevailing party on such issue.' ■ A judgment rendered without findings on all material issues must be reversed. (*Calloway* v. *Downie,* 195 Cal.App.2d 348, 352 [15 Cal.Rptr. 747].) ■ Not only must the court make findings on all material issues, but the findings made must be definite and certain. (*Estate of McAfee,* 182 Cal.App.2d 553, 556 [6 Cal.Rptr. 79].)"

In *Whitney Inv. Co.* v. *Westview Dev. Co.,* 273 Cal.App.2d 594, 604 [78 Cal.Rptr. 302], the rule is stated as follows: "While the general rule is that findings phrased in general language, if otherwise sufficient, imply the finding of every fact essential to support the judgment, that rule is inoperative where requests for special findings have been made. [Citations.]"

■ We reject the suggestion that this court should supply the missing finding for the reason stated as follows in *San Jose etc. Title Ins. Co.* v. *Elliott,* 108 Cal.App.2d 793, 803 [240 P.2d 41]: "Respondents also suggest that this court, under its constitutional and statutory powers, has power to supply the omission by making findings on the issue. This court can and should make findings where the evidence is uncontradicted. (*Yokohama Specie Bank* v. *Higashi,* 56 Cal.App.2d 709 [133 P.2d 487].) But where there is a total failure to find on a material issue, and where, as here, the

evidence on that issue is highly conflicting, the appellate courts will not make findings. (*Estate of Pendell,* 216 Cal. 384 [14 P.2d 506].)"

The following from *Perry* v. *Jacobsen,* 184 Cal.App.2d 43, 50 [7 Cal. Rptr. 177], is equally applicable in the case at bench: "The judgment in this case must be reversed because of the inadequacy of the findings of fact. The record does not indicate that any purpose would be served in ordering a new trial. Under such circumstances, it is proper to remand the case with directions to the trial court to make adequate findings, based on the evidence now before it; draw proper conclusions of law therefrom; and enter judgment accordingly. [Citations.]" (See also, *May* v. *May,* 275 Cal.App.2d 264, 270 [79 Cal.Rptr. 622].)

The judgment is reversed and the cause is remanded to the trial court with directions to make the required findings of fact and conclusions of law and to enter judgment accordingly.

Fleming, J., and Compton, J., concurred.