[Civ. No. 2688. Fifth Dist. Apr. 9, 1976.]

FARREL OTTO PACKER, Plaintiff and Respondent, v.
HERMAN SILLAS, as Director, etc., Defendant and Appellant.

208

**COUNSEL**

Evelle J. Younger, Attorney General, and Stephen J. Egan, Deputy Attorney General, for Defendant and Appellant.

Allen, Van Winkle & Ivey and William T. Ivey, Jr., for Plaintiff and Respondent.

## OPINION

**CARKEET, J.***—This case comes before this court on an appeal from a judgment of the reviewing court granting a peremptory writ of mandamus commanding defendant (hereinafter referred to as "appellant") to set aside and vacate its order suspending the driving privilege of plaintiff, who is respondent on this appeal.

The suspension order previously made by appellant was based on a finding by appellant that after a lawful arrest for alleged violation of section 23102, subdivision (a), of the Vehicle Code (driving under the influence of intoxicating liquor,) the respondent refused to submit or failed to complete any chemical test of his blood, breath or urine (as required under § 13353 of the Veh. Code,) after being requested to do so by the arresting officer.

The facts in this case are somewhat unusual but are not basically in dispute as to the incident of the arrest. On December 25, 1973, Officer Wagner of the California Highway Patrol (hereinafter referred to as Wagner) received a radio call from two highway patrol academy cadets that they had stopped a possible "23102(a) driver." Approximately one minute later Wagner received another call that the cadets were now pursuing the vehicle they had stopped. Wagner turned toward the vicinity and observed a vehicle traveling at a high rate of speed. Shortly thereafter he observed the highway patrol training unit pursuing the vehicle. The vehicle turned into a cross street, and Wagner and the cadets lost sight of it. At no time during the pursuit did Wagner get close enough to identify the vehicle, get its license number, determine its color, identify the driver, or even to observe if the driver was male or female.

Officer Wagner and the two cadets then proceeded immediately to search the area into which the vehicle had disappeared. The cadets had noted the color and the license number of the vehicle when they had first stopped it, and a vehicle of the same color and bearing the same license number was found parked in a driveway. Wagner proceeded to the doorway of the house and knocked. A Mr. Borba, the owner of the

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

house, came out, and the academy cadets identified him to Wagner as the driver of the vehicle. However, respondent then came out of the house and identified himself as the driver of the vehicle. Respondent bears no physical resemblance to Mr. Borba.

Officer Wagner approached respondent and requested his driver's license. He smelled alcohol on respondent's breath, and he observed that respondent's eyes were bloodshot and that his balance was very poor so that he swayed from side to side and staggered when he walked.

Officer Wagner then requested respondent to stand to the front of his vehicle along with two police officers who had apparently arrived in the interim. Wagner then returned to the door of the house, but a scuffle ensued between respondent and the two officers. When Wagner reapproached respondent, he was handcuffed. Apparently, during the scuffle, respondent suffered minor injuries to his ear and knee. Wagner advised respondent he was under arrest for misdemeanor drunk driving in violation of section 23102, subdivision (a), of the Vehicle Code.

Respondent was transported to the Merced County Hospital, and before entering the hospital respondent was read a statement of implied consent which stated he was required to take a chemical test to determine the alcohol content of his blood, that he could choose between a blood, breath or urine test, and that if he refused any test his driving privilege would be suspended for six months.

Respondent refused to take any test, and Wagner thereupon drove away from the hospital to transport respondent to the sheriff's office for booking. On the way respondent indicated he would take a test, and they returned to the hospital, arriving at approximately 9:15 p.m. At the hospital respondent was treated in the emergency room for the injury to his ear and knee. Respondent was asked to and did empty his bladder.[1] After a waiting period, respondent was requested by Wagner to give a urine sample but was unable to do so. According to Wagner, respondent was then asked by Wagner whether he would take a breath or blood test, but respondent refused to take either. Wagner testified he then informed respondent this was the same as a refusal to take any test since he was unable to give a urine sample.

---

[1] The procedure for taking a urine sample is to first ask a person to empty his bladder. Only later, after a sufficient period of time, is the suspect asked to give a urine sample to be analyzed.

Respondent was then taken to the Merced sheriff's office for booking. Respondent testified he arrived at the sheriff's office at approximately 9:45 to 9:50 p.m., and the booking slip indicates the booking procedure was begun at 9:56 p.m. The booking officer testified that the normal booking procedure takes from seven to ten minutes. During the booking procedure respondent was again asked to give a urine sample and attempted to do so but was unable to produce a sample of urine.

After completing the booking procedures, at 10:15 p.m., respondent again tried to produce a specimen of urine but was unable to do so. Wagner testified he then again informed respondent that his inability to do so constituted a refusal under the law and that he would have to take one of the other two tests. Wagner questioned him about each of the other two tests and, according to Wagner, respondent refused to take either of them and Wagner left the sheriff's office.

## I. WAS THE ARREST A LAWFUL ONE?

The first and most crucial issue to be resolved on this appeal is whether the arrest of respondent was unlawful.  ■  If so, then the request for him to submit to a chemical test for alcohol was not warranted, and a refusal to submit to such a test would not authorize a license suspension under Vehicle Code section 13353.

In this case respondent was arrested for violation of Vehicle Code section 23102, subdivision (a), which makes it a misdemeanor to drive a vehicle while under the influence of intoxicating liquor.

Under Vehicle Code section 13353 a person is deemed to consent to one of three tests (blood, breath or urine) for determining the alcoholic content of his blood if he is *lawfully* arrested for any offense allegedly committed while driving under the influence of intoxicating liquor. Failure to submit or complete such a test results in the suspension of driving privileges for six months. Section 13353 reads in part:

"(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such

person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice."

Prior to the 1957 amendment, Penal Code section 836 provided in misdemeanor cases that an officer could make an arrest without a warrant under certain circumstances, viz:

"A peace-officer may . . . without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence."

Our courts, however, read an element of "reasonable belief" into the statute. In *Coverstone* v. *Davies* (1952) 38 Cal.2d 315 [239 P.2d 876], a group of college students had gathered near an intersection in Los Angeles to view a "hot-rod" race (an illegal activity.) Plaintiffs were in the group but disclaimed knowledge that a race had been proposed or was in progress. Defendants (deputy sheriffs) arrived at the scene and ordered the group to stay together. Other officers arrived and plaintiffs (and others) were taken into custody, booked and subsequently released on their own recognizance. They were later arraigned on a complaint signed by defendant Davies charging a violation of section 407 of the Penal Code (unlawful assembly), pleaded not guilty and were subsequently tried and acquitted. Plaintiffs sued for false arrest.

The court said: "Since it is settled that a peace officer may lawfully make an arrest for a public offense committed or attempted in his presence (Pen. Code, § 836), the critical question presented in this case is whether the acts done in the presence of the arresting officer justified the arrests being made without a warrant.

"It is not disputed that the group was assembled to view a 'hot-rod' race. Such illegal purpose renders the action of the group knowingly

participating therein an unlawful assembly within the meaning of section 407 of the Penal Code. When the officers arrived upon the scene, they had the authority to arrest all those engaged in the commission of the unlawful act, and in our view they were entitled to act on reasonable appearances in determining who were parties to the offense. It is patent that the officers acted upon probable cause in arresting [plaintiffs] as members of the unlawful assembly. Such being the case, the arrests were lawful as being arrests for acts committed in the officers' presence.

". . . a public offense is committed in the presence of an officer within the meaning of a statute such as Penal Code, § 836, when 'circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence.' [Citation.] . . . . As stated in *State* v. *Mullen,* 63 Mont. 50, 58 [207 P. 634]: 'Whatever else may be said upon that subject, the utmost that can be exacted of the officer who arrests without a warrant is that the circumstances shall be such that upon them alone he would be justified in making a complaint upon which a warrant might issue.' " (*Coverstone* v. *Davies, supra,* 38 Cal.2d at pp. 319-321.)

A 1957 amendment to Penal Code section 836, subdivision 1, codified this rule so that it now provides that an officer may arrest for a misdemeanor, without a warrant, "Whenever he has *reasonable cause to believe* that the person to be arrested has committed a public offense *in his presence.*" (Pen. Code, § 836, subd. 1; italics added.)

In *Freeman* v. *Dept. of Motor Vehicles* (1969) 70 Cal.2d 235 [74 Cal.Rptr. 259, 449 P.2d 195], an analogous case, one peace officer stopped respondent for suspicion of drunk driving. The officer then radioed for assistance and a second officer responded. After learning from the first officer what he had observed and determining from his own observations that respondent was indeed intoxicated, *and being told by the respondent himself* that he, the respondent, had been driving the vehicle at the time it was stopped, the second officer placed respondent under arrest for drunk driving. Since the first officer had seen the alleged offense and related his observations to the second officer and had participated in the arrest, the requirement of section 836, that the offense be within the officer's "presence," was fulfilled.

In the case before the court, the cadet officers had observed the erratic driving, had stopped the respondent's vehicle and had recorded the make, description and the license number of the car during the stop. The respondent had, without permission, driven away from the "stop"

and eluded both the cadets and Wagner. After a brief search and location of the missing car, the officer and cadets approached the home where it was found and made inquiry as to ownership. The cadets mistakenly identified Borba as the driver but the respondent volunteered that he had been driving the car, and his own physical appearance and behavior supplied the evidence of intoxication. At that point Wagner had reasonable cause to believe that the public offense of drunk driving had been committed; and the observation of the cadets, coupled with the identity established by the respondent himself, met the requirement that the offense was in the officer's "presence," under the rule of *Freeman* v. *Dept. of Motor Vehicles, supra.*

In *People* v. *Sjosten* (1968) 262 Cal.App.2d 539 [68 Cal.Rptr. 832], a private citizen called the police after observing a prowler in the neighborhood. When the police arrived the citizen identified the appellant as the prowler. The citizen, desiring to make a citizen's arrest, asked the officer to make the arrest for her. The court held the arrest valid even though the police officer had not witnessed the criminal activity, and cited Penal Code section 839 which provides that, "Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein." The court found that the statute "impliedly authorizes the delegation of the physical act of taking an offender into custody." (*People* v. *Sjosten, supra,* 262 Cal.App.2d at p. 544.)

In *People* v. *Harris* (1967) 256 Cal.App.2d 455 [63 Cal.Rptr. 849], a private citizen observed a hit-run accident and pursued the offending vehicle and forced it to pull over. He asked the defendant to remain there as he summoned a police officer who subsequently arrested defendant. The court held the arrest was valid, noting that " '[a]n arrest is made by an actual restraint of the person' " (*Id.,* at p. 459,) and under the circumstances the citizen had made a valid citizen's arrest. Moreover, the arrest was not terminated when the defendant was later turned over to police officers. The court stated: "*An arrest is more than a transient momentary incident. It continues through a transfer of custody of the accused from a citizen to a peace officer.*" (*Id.,* at pp. 459-460; italics added.) And so, in the instant case, the arrest was more than a transient momentary incident. The process consisted of: A beginning with the stopping of the vehicle by the cadets; an interruption of the process by the flight of the respondent; a continuance of the process upon the location of the vehicle, the self-identification of the respondent and the on-scene tests indicating intoxication and his actual arrest.

Respondent relies on *People* v. *Walker* (1962) 203 Cal.App.2d 552 [21 Cal.Rptr. 692]. In *Walker,* an automobile driven by defendant at nighttime collided with another automobile parked adjacent to the curbing of the street. This accident followed an erratic course of driving involving near collisions with three other automobiles, the running of a stop sign, and going from one side of the road to the other. After the collision the defendant stopped, alighted from his car and went to the rear of the car that had been struck. Following a call to the police, a traffic officer assigned to the accident investigation bureau arrived at the scene within three to five minutes. He was told by others what had happened, talked to the defendant, gave the latter some sobriety tests, concluded that he was under the influence of alcohol, asked to see his driver's license, which the defendant did not have in his possession, and arrested him for driving while under the influence of alcohol and for driving without an operator's license.

In *Freeman,* the court distinguished *Walker,* as follows: "The officer had not seen the defendant commit the alleged offense of drunk driving, and the arrest was therefore determined to be unlawful. Other persons at the scene told the officer that the defendant's car had been weaving from one side of the road to the other before it collided with a parked car and came to a stop; but it does not appear that anyone had sought to make a citizen's arrest or detain the offender until the police arrived or, as occurred in the present case, that another officer had witnessed the offender's actions and 'stopped' him." (*Freeman* v. *Dept. of Motor Vehicles, supra,* 70 Cal.2d at p. 239.)

The present case before the court is readily distinguishable from *Walker* in the following important details: (1) the cadets compelled respondent to stop his car, which he did long enough for the cadets to note its type, color and license plate number; (2) this restraint was broken by respondent's flight without the permission of the cadets, thus interrupting the detention and arresting process; (3) the cadets, who had noted the details about the automobile, aided Wagner in the search for the car and were present when it was located, and when respondent was located and identified himself as the driver. Although the record is unclear, it is a reasonable inference that they were also present when respondent was arrested. In other words, they actively participated in the whole continuing process of the arrest, and when respondent identified himself as the driver and displayed evidence of obvious intoxication, the total facts then known to Wagner obviously constituted reasonable cause to believe that a crime had been committed in his presence, and the

self-identification by respondent simply supplied to Wagner the fact of by "whom" the crime had been committed.[2] Certainly, the circumstances were such that upon them alone Wagner would have been justified in making a complaint upon which a warrant might issue. (*Coverstone* v. *Davies, supra,* 38 Cal.2d at p. 321.)

Respondent argues that there is no difference between the present case and the case of an officer finding a drunk asleep behind the wheel of an automobile in a roadway and learning from the driver's own admission that he had been driving the automobile, and then making an arrest for drunk driving where neither the officer nor any complaining citizen had witnessed the driving. Respondent's hypothetical case is readily distinguishable from the case before the court. Here, the driving in an erratic manner of an identifiable vehicle was witnessed by the ones stopping the vehicle and by the one arresting the driver; the circumstances placed respondent at the location where the automobile was found; and the driver, by his own conduct, demonstrated his intoxication, and by his own statement put himself behind the wheel. A comparable situation might be envisioned in the following set of facts: An officer comes upon a street corner scene where four people are in some sort of melee and he sees an arm with a clenched fist strike out and hit another person in the

---

[2]See *Noia* v. *Cozens* (1973) 34 Cal.App.3d 691 [110 Cal.Rptr. 231] for a case of proper arrest without positive identification. The arresting officer followed an erratic driver for a half mile, then turned on the red light, and when the driver didn't stop, blew his horn and flashed his lights. The driver turned into the driveway of a home and drove behind its detached garage. The officer exited his patrol car and walked up the driveway behind the house. He saw no one cross from the garage area to the house area during the five to ten seconds that the automobile was out of his sight. He found the automobile parked behind the garage with the lights on, the driver's door open, and the driver gone. He knocked at the back door and two boys who answered the door said the car belonged to their father. As the officer walked back toward the car, Noia came out of the garage through a side entrance. One to one and one-half minutes had elapsed and there was no one else in the area. The officer asked Noia for his driver's license, but Noia showed him a Marine identification card. Noia's speech was slurred and he smelled of alcohol. He attempted one field sobriety test, but refused to perform others. He was arrested for drunk driving and properly advised of his rights and responsibilities. Noia refused to submit to a chemical test for blood alcohol. The court held the arrest was lawful even though the officer had never gotten close enough to the car to identify the driver. "But it does not follow that [Officer] Chappell was without reasonable cause to believe Noia was the driver and therefore to make a lawful arrest. An arrest is valid even when the officer arrests the wrong person if the officer has reasonable cause to arrest another person and reasonably mistakes the wrong person for the other person. (*People* v. *Hill,* 69 Cal.2d 550, 553 [72 Cal.Rptr. 641, 446 P.2d 521].)

Reasonable cause is shown by facts which would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person to be arrested is guilty of a crime. (*People* v. *Lockwood,* 253 Cal.App.2d 75, 80 [61 Cal. Rptr. 131].)" (*Noia* v. *Cozens, supra,* 34 Cal.App.3d at p. 694.)

face. He rushes into the group and tells them all to wait until he determines what to do. One of the group volunteers the statement: "I'm the one who struck him." Certainly, on that set of facts, the officer would have reasonable cause to believe that an offense was committed in his presence, and by the party so identifying himself, even though the officer, absent such voluntary self-identification, could not have identified the party who struck the blow.

Respondent was the possessor of a license authorizing him to drive a motor vehicle upon the public highways in the State of California. ■ Possession of such operator's license is an existing vested right for the purpose of administrative mandamus. (*James* v. *Dept. of Motor Vehicles* (1968) 267 Cal.App.2d 750, 752 [73 Cal.Rptr. 452].) ■ The trial court properly exercised its independent judgment in such case to ascertain if the evidence was sufficient to support the findings of the administrative board. (*Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 848 [97 Cal.Rptr. 226].)

In such cases, "[T]he province of the appellate court is analogous to that assumed by it in an ordinary civil appeal: only errors of law are subject to its cognizance, and a factual finding can be overturned only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding." (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].)[3]

In its findings of fact the court below found (inter alia):

"6. Officer Wagner knocked on the door which was answered by the owner of the residence, a Mr. Borba.

7. At that time Mr. Borba was identified by both of the cadets to Officer Wagner as the driver of the vehicle which had left the scene of their stop.

---

[3]"If the right affected is 'vested' the decision is reviewed by means of a limited trial de novo in which the trial court not only examines the record for errors of law but also exercises its independent judgment upon the *weight* of the evidence produced before the administrative agency together with any further evidence properly admitted by the court. [Citations.] ....

"The question whether or not the right affected is 'vested' is decided by the courts on a case-by-case basis. [Citations.] It has been held that the denial of a license to a previously unlicensed person does not affect a 'vested' right, whereas the suspension or revocation of an existing license does affect such a right. [Citations.]" (*Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d at pp. 914-915.)

8. Subsequently, petitioner came from the house and identified himself as the driver of the vehicle.

9. Neither Officer Wagner nor the cadets could identify petitioner as the driver."

From its total of 18 findings of fact, the lower court made its conclusions of law, which included the following:

"1. Petitioner's admission that he was driving the vehicle does not provide a substantial basis for a finding that the offense was committed in Officer Wagner's presence.

2. The arrest was unlawful since it was not in obedience to a warrant or pursuant to the authority granted to a peace officer to arrest a person whenever he has reasonable cause to believe that the person has committed a public offense in his presence."

In this case, the court below wrote an opinion, or "decision," at the conclusion of the hearing and prior to the signing of findings of fact and conclusions of law. The memorandum of opinion discloses the reasoning by which the lower court reached its conclusion that the arrest was unlawful.[4] "Although a trial judge's opinion may not be used to impeach, modify or add to his findings, it may be used for the purpose of discovering the process by which he arrived at his conclusion." (*Henderson* v. *Fisher* (1965) 236 Cal.App.2d 468, 472 [46 Cal.Rptr. 173]; see also *Niles Sand & Gravel Co.* v. *Alameda County Water Dist.* (1974) 37 Cal.App.3d 924, 933 [112 Cal.Rptr. 846].)

---

[4]The opinion reads in part: "The record establishes that Officer Wagner had probable cause to believe that the petitioner had committed the offense of driving while under the influence of intoxicating liquor. The question for determination is whether he was authorized to arrest the defendant for that offense without a warrant, bearing in mind that Vehicle Code section 23102(a) is a misdemeanor. The offense and the arrest both occurred at night. Under these circumstances, a lawful arrest without a warrant was permissible only if the offense had been committed in the presence of the arresting officer (Penal Code sections 836, 840). Neither Officer Wagner nor the two cadet officers could identify the petitioner as being the driver of the subject vehicle. Officer Wagner arrived at the Arboleda address where the vehicle was parked. It is obvious that the evidence shows that the only way that Officer Wagner could connect the petitioner to the vehicle as driver was by the petitioner's admission. The admission does not give a substantial basis for a finding that the offense was committed in the officer's presence. The court finds that the arrest was unlawful (*People* v. *Walker*, 203 C.A.2d 552)."

In the instant case, it is quite clear from the trial court's decision that it considered that the facts in this case, as disclosed by the transcript of the administrative hearing, clearly showed that the officer had probable cause to believe the respondent had committed the offense of driving while under the influence of intoxicating liquor, but that since neither the cadets nor the officer could identify the respondent as the driver of the vehicle, the driver's own admission could not supply the missing element of identity so as to constitute an offense committed in the officer's "presence," and the court based its conclusion upon *People* v. *Walker, supra,* 203 Cal.App.2d 552.

However, the facts in the instant case are more analogous to the facts in *Freeman* v. *Dept. of Motor Vehicles, supra,* 70 Cal.2d 235, which readily distinguished the *Walker* case because in *Walker* the arresting officer had not seen the offense of drunk driving being committed, no one had attempted to make a citizen's arrest or detain the plaintiff, and no other officer had witnessed the offense or "stopped" the plaintiff. In addition, of course, in the instant case the admission of driving is present. We conclude, as a matter of law, that the findings of fact do not support the conclusions of law. We further find that the findings of fact support the conclusion that the arrest made by Officer Wagner was a lawful arrest.

## II. Did Petitioner Refuse to Submit to Any Chemical Test of His Blood, Breath or Urine After Being Requested to Do So By the Officer?

The above-stated second issue, as raised by the respondent, is predicated upon two contentions: First, that respondent did attempt to comply with a urine test, but the arresting officer allowed him insufficient time in which to be able to produce a urine sample for testing and, therefore, any failure to perform the test was due to the misconduct of the officer and not the fault of respondent; second, that after his inability to produce a urine sample, the officer failed to properly advise respondent that such failure constituted a refusal under the statute unless the petitioner agreed to take and did take a breath or blood test.

It has been held that if a person refuses to consent to an alcohol test after he had been given inaccurate advice by the arresting officer, then a suspension of his driving privileges is invalid (*Decker* v. *Department of Motor Vehicles* (1972) 6 Cal.3d 903 [101 Cal.Rptr. 387, 495 P.2d 1307]; *Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905 [93

Cal.Rptr. 613].) Respondent argues that it follows that if the test is agreed to but not completed by the arrested person because of some act of the officer which does not allow the arrested person to complete the test, then the suspension of the driving privilege should not be sustained.

Respondent further concludes that in this case respondent's failure to complete the urine test was the result of the officer arbitrarily failing to give him sufficient time to urinate after having emptied his bladder.

This conclusion is based upon a precise delineation of the time sequences involved. The administrative record discloses a sharp conflict of testimony between respondent and the arresting officer as to the time sequences involved. Respondent's contention is that from the time he initially emptied his bladder as the first step in taking the urine test (to which he had agreed) until the next two requests by the officer for him to give a urine sample, the officer did not allow him sufficient time in which a normal person could be expected to voluntarily produce a specimen (after having emptied his bladder.) That respondent made an attempt to comply each time is not disputed. The expert testimony of a medical specialist, a urologist, was received by the hearing officer and is part of the record. He testified that it would take from 30-45 minutes at the earliest before a normal person would be able to give a urine sample after having emptied his bladder. The urologist also testified that within 30 minutes most people would not be able to give a urine sample. However, no testimony was elicited specifically regarding respondent's urinary functions.

If the testimony of respondent is believed, he had only 26 to 41 minutes to generate a urine sample which might have been an insufficient time for a normal person to do so according to the expert's testimony. If Officer Wagner is believed, the respondent had 41 to 61 minutes to produce such a sample which would appear to have been adequate time.

The trial court made no specific finding as to the time sequence involved or whose testimony was believed. In fact, the only finding pertinent to the issue was finding number 14, that "Petitioner did not take a chemical test." There is no finding that respondent "refused" to take such a test or that any such refusal resulted from improper conduct of the arresting officer.

Indeed, in its written decision, the trial court indicated that since it had held the arrest was unlawful the issue of whether or not respondent had refused to take a chemical test was a moot issue. However, for the "guidance of the parties," the trial court stated that "the inability of petitioner to supply urine has the same effect as a refusal and the petitioner should have consented to either the blood or breath test if he wished to avoid the penalty for refusal to submit to a chemical test." This latter statement implies an opinion on the part of the trial court that the refusal of petitioner to supply urine in this case would have been a valid ground for suspension of his driving privileges if the trial court had held the arrest to be lawful.

This raises the question of whether this court should imply such a finding. ■ Although written trial court opinions have been used to explain the reasoning of the trial court, or to interpret ambiguous findings, the opinion of a trial judge cannot be substituted for or used to modify findings of fact. (*Oldis* v. *La Societe Francaise* (1955) 130 Cal.App.2d 461, 473 [279 P.2d 184].)

■ Code of Civil Procedure section 909[5] authorizes the appellate court to make additional findings under certain circumstances. Where the trial court has made no findings, the reviewing court will not on such a record make independent findings of its own. (5 Cal.Jur.3d, Appellate Review, § 567, p. 276; *Larson* v. *Thoreson* (1951) 36 Cal.2d 666 [226 P.2d 571].) And where the facts are in conflict the appellate court will not supply the missing findings. " 'This court can and should make findings where the evidence is uncontradicted. (*Yokohama Specie Bank* v. *Higashi,* 56 Cal.App.2d 709 [133 P.2d 487].) But where there is a total failure to find on a material issue, and where, as here, the evidence on that issue is highly conflicting, the appellate courts will not make findings. (*Estate of Pendell,* 216 Cal. 384 [14 P.2d 506].)' " (*Weisz Trucking Co.* v. *Emil R. Wohl Constr.* (1970) 13 Cal.App.3d 256, 263-264 [91 Cal.Rptr. 489].)

■ This case involves a disputed factual question as to when respondent first emptied his bladder at the direction of the officer. There is no finding of fact on that question and no finding on the ultimate question arising out of that issue, i.e., whether respondent's failure to give a urine sample constituted a refusal to take that test.

[5]Formerly section 956a, Code of Civil Procedure.

A like problem arises on the second phase of this issue, to wit: after respondent demonstrated he was unable to give the urine sample, did the officer properly advise him that such failure constituted refusal under the statute and that he would therefore be required to submit to either the breath test *or* blood test and that failure to do so would cause him to lose his license for six months?

In the court below the respondent argued that after he was unable to give a urine sample during the booking procedure, Officer Wagner only advised him that he must consent to a breath test and not that he must consent to a breath test *or* blood test, while appellant contends that Wagner properly advised him in all respects on this subject.

Although the trial court stated in its decision (memorandum of opinion) that ". . . for the guidance of the parties, the court indicates that from the evidence it is obvious that Officer Wagner fully and completely informed the petitioner of his rights pursuant to section 13353 of the Vehicle Code," the court failed to make such a finding. After reciting the fact of the arrest in findings Nos. 11 and 12, finding No. 13 states: "13. Subsequently, Officer Wagner advised petitioner that he would be required to take a chemical test."

For the reasons above-stated, this court cannot make a finding on such a controverted question of fact upon which the trial court made no findings.

Since there is a possibility that the trial court might wish to receive additional evidence on either or both questions under issue No. 11, under its power of limited trial de novo, this court should remand this case with directions to the trial court rather than enter an unqualified reversal.

The judgment is reversed and the cause is remanded to the trial court with directions to make findings of fact and conclusions of law upon the present record or upon the present record augmented by such additional evidence as the trial court might, in its discretion deem proper to receive, upon the two stated questions under issue No. 11 hereinabove, and to make new findings of fact and conclusions of law and enter a new judgment thereon.

Brown (G.A.), P. J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 2, 1976.