THE UNION LEAGUE CLUB

*v.*

THE BLYMYER ICE MACHINE COMPANY.

204   117
113a  1171

*Opinion filed October 26, 1903.*

1. SALES—*when contract does not give arbitrary discretion to reject article.* A provision in a contract to install a refrigerating machine, that in case it proves unsatisfactory "for any other cause than non-fulfillment of the guaranties" the seller shall remove it, and it shall be optional with the purchaser "to accept and pay for the machine or not, as it may please, on the date above specified," does not give the purchaser the right to arbitrarily reject the machine after using it for many months past such date.

2. SAME—*when proof that article fulfilled guaranties is proper.* Proof that a refrigerating machine fulfilled all of the seller's guaranties is proper in an action for the purchase price, where the contract provides for payment on a certain date "provided the machine fulfills the guaranties herein given," even though the contract also gives the purchaser a right to refuse payment on that date if the machine is unsatisfactory for any reason other than non-fulfillment of the guaranties. (*Goodrich* v. *VanNortwick,* 43 Ill. 445, and *Low* v. *Pardee,* 48 id. 466, distinguished.)

*Union League Club* v. *Ice Machine Co.* 104 Ill. App. 106, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. A. K. VICKERS, Judge, presiding.

This is a suit, begun on October 14, 1898, in the circuit court of Cook county by the defendant in error against the plaintiff in error upon a contract, made by the defendant in error with the plaintiff in error for the building and erection for the latter of one of the defendant in error's latest improved compound compression refrigerating machines in the club house of plaintiff in error in Chicago. The plea, filed by plaintiff in error, was the general issue. The cause was tried before the court, and a jury. The jury found the issues for the plaintiff, and assessed his damages at the sum of $2030.50. Motions for new trial and in arrest of judgment were overruled,

to which exceptions were taken, and judgment was rendered upon the verdict, to which an exception was also taken. An appeal was taken to the Appellate Court from the judgment of the circuit court, where the judgment of the latter court was affirmed. The present writ of error is from such judgment of affirmance by the Appellate Court.

The declaration sets out the contract in writing *in hæc verba*, and avers that, pursuant to the agreement, the plaintiff did build and erect for the defendant the refrigerating machine in accordance with the terms and specifications of the contract, and that defendant, the Union League Club, used said machine, so built and erected by plaintiff on its premises, for a period of four years, and that, during that time, the machine served all the purposes, and did all the things, required by the defendant by it to be done, and carried out and fulfilled all the guaranties, made by the plaintiff therein to the defendant. The declaration also avers defendant has never paid to plaintiff the money in said contract specified by it to be paid.

The contract sued upon was entered into on December 21, 1894, between the Blymyer Ice Machine Company, A. B. Meader, trustee, and the Union League Club. It provided that the refrigerating machine should consist of a compressor, condenser, ammonia, valves, pipes, and fittings. It then provided as follows: "We guarantee that this machine will refrigerate the following sizes of boxes to the temperature named for each." (Then follows a list of boxes, their capacity in cubic feet, and the temperatures at which the machine is guaranteed to refrigerate). "We also guarantee that the power required to run this machine shall not exceed six horse power. We also guarantee that the water required for the condenser shall not exceed four gallons per minute at a temperature of seventy degrees.

"Considerations: We agree to erect the machine in the Union League Club house, we paying all freights, for the sum of $1800.00, payable October 1, 1895, provided

the machine fulfills the guaranties herein given. In case of its failure to fulfill the guaranties, we agree to remove the machine from said premises, and put the said boxes in the same condition, in which they were at the time we took charge of them.

"It is further agreed that the boxes shall be left in such condition, at all times, that in case the machine fails, even for one day, the boxes can be refrigerated with ice, as heretofore, in which case the ice is to be paid for by said club and not by us.

"We also agree that, in case the machine proves unsatisfactory for any other cause than those above stated, we shall remove it from said premises, replacing the boxes in the same condition in which they were when we entered the premises, and it shall be optional with the said Union League Club to accept and pay for the machine or not, as it may please, on the date above specified.

"Agreements on part of Union League Club: Said club agrees to furnish the power for running this machine; we will furnish all needed shafting, piping, pulleys and belting to transmit the power to the machine. Said club agrees to furnish the necessary water, required at a close point to the machine, and convenient for making connections thereto. Said club also agrees to see that the machine has proper care while running, and is kept lubricated, and to furnish a solid floor on which to stand the machine; work to be done at such hours as not to interrupt the business of the club."

PLINY B. SMITH, for plaintiff in error.

MOSES, ROSENTHAL & KENNEDY, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The refrigerating machine, which defendant in error agreed to erect for plaintiff in error in its club house, was installed about July 1, 1895, and finally dismantled by

the club on or about May 13, 1898. The evidence is clear and undisputed that the club continued to use the machine from the time it was so installed until about May 13, 1898, a period of nearly three years. At the latter date, a fire occurred in the club house, and, prior thereto, the club had resolved to have a larger machine than that of defendant in error, and had entered into negotiations for the purchase of such larger machine. When the refrigerating machine, erected by the defendant in error, was dismantled, certain parts of the machine, consisting of "I" beams fastened in the walls of the building, hangers attached thereto, and a shaft with pulleys thereon secured in the hangers, were not removed, but were retained by the club. The shaft and one of the pulleys were afterwards attached to a ventilating fan, and to the new machine purchased by the club. After the dismantling, the club continued to use the "I" beams, which were about thirty feet in length, and extended from the west wall through the inner or fire wall and into the room east of the fire wall, being secured by holes made in the fire wall, through which the beams were thrust, their west ends being inserted into the west wall of the building. The openings in the walls to admit the beams were closed up with brick and mortar, or cement. The pulleys and shaft were used for the purpose of transmitting power from the engine to the refrigerating machine.

After the refrigerating machine was thus dismantled, and on May 25, 1898, the chairman of the property committee of the club sent a written request to A. B. Meader, the trustee and agent of defendant in error, requesting him to remove the machine without delay, so as to leave the club house in the same condition in which defendant in error had found it.

Several times during the period from the date of the contract on December 21, 1894, to May 25, 1898, the board of directors of the club, upon the recommendation of its property committee, voted to order the refrigerating ma-

chine removed, and, in pursuance of such votes, notices were given to the defendant in error to make such removal. The first order, made for the removal of the machine, was on December 16, 1895. But the club receded from its determination to have the machine removed, and, as late as February, 1896, made provision for an examination of the machine by an expert; and an expert was sent from Cincinnati by Meader to test the machine with the consent of the club. The superintendent of the club wrote to Meader on July 7, 1896, that it would be entirely satisfactory to him if the test was made on the tenth day of July. Accordingly, an expert was sent from Cincinnati to make the test, and, on August 28, 1896, reported that "the machine has been taking care of all the boxes and easily doing all of the work with which it is connected." On September 2, 1896, the superintendent of the club telegraphed to Meader at Cincinnati as follows: "Directors' meeting September 14; machine working O. K." The correspondence, introduced in evidence, consists of about fifty-nine letters, which passed between Meader, the agent and trustee of the defendant in error, and some representative of the club, sometimes the superintendent, sometimes the secretary, and sometimes the chairman of the property committee, as it was called. During the correspondence, Meader proposed to put in a caraffe box, which was capable of freezing about two hundred caraffes per day; and this proposition seems to have been consented to, or accepted, by the club.

On September 15, 1896, the board of managers of the club had a meeting, and voted not to accept the ice machine, and Meader was advised of this vote by the secretary of the club on the same day, September 15, 1896. The correspondence shows that the club gave no reasons why it refused to accept the ice machine. At one time the club spent $150.00 in repairing the machine, and, during all the time when this correspondence was going on from October, 1895, to May, 1898, the club continued to

use the machine. After the vote taken on September 15, 1896, the club seemed to again recede from the position taken by it on that day, and sent to Meader a copy of the report of its property committee, dated September 8, 1896, upon which its action, taken on September 15, 1896, appears to have been based. After its action on September 15, 1896, the club, instead of stopping the machine and ordering its removal from the club house, listened to arguments by Meader against the correctness of the report of September 8, 1896. The correspondence shows that, although Meader was continually asking for the reasons why the club regarded the machine as a failure, no such reasons appear to have been given to him by the club, or any of its representatives. As late as February 18, 1897, the superintendent of the club resumed the correspondence, and informed Meader that a new property committee had been appointed with a new chairman, and stated to Meader that he would find the new chairman "a very pleasant gentleman." As late as March 19, 1897, Meader wrote to the chairman of the property committee, stating that nearly two years had elapsed since the machine had been turned over to the club, and that it had been in continual operation, doing its full duty, and showing a surplus capacity beyond that required by the club. The testimony tends to show that the machine had been doing good work all the time. Many of Meader's letters, however, were unanswered, although the club still continued to use the machine. It would appear that, as late as September, 1897, or August 30, 1897, the superintendent of the club had written a letter to Meader inquiring whether the machine could be changed into an "ice-maker." Meader replied on September 16, 1897, that it could not be changed into an ice-maker. For eight months after this letter of September 16, 1897, the club, although continuing to use the refrigerating machine, and although it entered into negotiations during the latter part of that time with another company for a new

and larger ice machine, made no reply to the letters of Meader and his continual requests for a settlement. The next communication, sent to Meader by the club after September 16, 1897, was the notice already referred to of May 25, 1898.

The club gave no reasons to the defendant in error why it desired a removal of the machine, because it took the ground that, under the contract, it had the option to accept or reject the machine arbitrarily, and without giving any reasons for doing' so. We do not think that this is the proper interpretation of the contract. .

In the contract defendant in error made three specific guaranties: first, that the machine would refrigerate certain sizes of boxes to the temperature named for each; second, that the power, required to run the machine, should not exceed six horse power; and third, that the water, required for the condenser, should not exceed four gallons per minute at a temperature of seventy degrees. The contract then contains the following provision: "We agree to erect the machine in the Union League Club house, we paying all freights, for the sum of $1800.00, payable October 1, 1895, provided the machine fulfills the guaranties herein given. In case of its failure to fulfill the guaranties, we agree to remove the machine from said premises, and put the said boxes in the same condition, in which they were at the time we took charge of them."

The evidence in the case shows, that the machine did fulfill the guaranties thus mentioned in the contract. The evidence upon that subject was introduced by the defendant in error. The plaintiff in error introduced no evidence upon the subject, whether the machine fulfilled the guaranties or not, upon the ground, assumed by the club, that it was purely optional with the club whether it purchased the machine or not, and, therefore, it made no difference whether the guaranties were fulfilled or not. For this reason, it is claimed by plaintiff in error, that the court erred in allowing the defendant in error

to produce any evidence to show that the guaranties were fulfilled. We are of the opinion that there was no error in this regard. The contract expressly provides that the purchase price of the machine, to-wit, $1800.00, was payable on October 1, 1895, "provided the machine fulfills the guaranties herein given." Inasmuch as the guaranties were fulfilled, the plaintiff in error was bound to pay for the machine on October 1, 1895, except so far as the provision of the contract making it payable on that date is modified and changed by the subsequent part of the contract.

The subsequent part of the contract provides as follows: "We also agree, that in case the machine proves unsatisfactory for any other cause than those above stated, we shall remove it from said premises, replacing the boxes in the same condition in which they were when we entered the premises, and it shall be optional with the said Union League Club to accept and pay for the machine or not, as it may please, on the date above specified." If the machine proved to be unsatisfactory for any other cause than that it did not fulfill the guaranties named, then defendant in error was required to remove it, and the option was not an option to take and pay for the machine or not as plaintiff in error should please, but it was an option to accept and pay for the machine or not, "as it may please, on the date above specified," that is, on October 1, 1895. In other words, if the machine was not satisfactory for any other cause than the non-fulfillment of the guaranties, then the plaintiff in error had the option not to accept or pay for it on October 1, 1895; but there is no statement in the contract that it was not to pay for it at all. The provisions of the contract show that the machine was to be tried and tested, in order to determine whether it would fulfill the guaranties or not, and in order to determine whether it was unsatisfactory or not from some other cause than the non-fulfillment of the guaranties. This is shown by such

provisions, as that the club was to furnish a solid floor on which to stand the machine, and the work was to be done at such hours as not to interrupt the business of the club. In case it became necessary to test the machine at some period beyond October 1, 1895, then the club was relieved from the obligation to accept and pay for it at that date.

Counsel refers to the case of *Goodrich* v. *VanNortwick*, 43 Ill. 445, in support of his contention that proof upon the question of the fulfillment of the guaranties was improperly admitted by the court. But that case is not on all fours with the case at bar. There, the contract was in relation to the sale and purchase of a fanning mill to clean wheat, and it was agreed that "if the mill suited appellee, and answered the purpose, he was to keep it, otherwise it was to be returned within thirty days from the time the purchase was made, and the money was to be refunded." And it was there held that "the terms of the agreement were, that if it suited and answered the purpose. It is manifest, that it was required to answer both requirements. If it did not suit appellee, then he had the right to return the property, and he was by the terms of the contract to be the sole judge of whether it suited him."

Counsel also refers in support of his position upon this branch of the case to the case of *Low* v. *Pardee*, 48 Ill. 466, where the contract was, "if Low did not like the planter, he was to return it, and nothing was to be paid."

In the case at bar, there is no such provision as that plaintiff in error was to have the option not to accept and pay for the refrigerating machine, unless it suited the club, or it liked it. On the contrary, the club was to pay for the machine if it fulfilled the guaranties, and if, for any cause other than the non-fulfillment of the guaranties, the machine was unsatisfactory, the club had a certain option. The very fact, that there was to be some other cause than the non-fulfillment of the guaran-

ties shows that the club did not have an arbitrary option to reject the machine. The proof, that the machine fulfilled the guaranties, was necessary, in order to show that, if the machine was not satisfactory, it must have been from some other cause than the failure to fulfill the guaranties. Therefore, the evidence upon this subject was properly admitted by the court. It was the duty of the club to show what the cause was, which was claimed by it to establish the unsatisfactory character of the machine.

There are authorities, which hold that, "where one party agrees to do a thing to the satisfaction of another, and the excellence of the work is a matter of taste, such, for instance, as a portrait, bust, suit of clothes, dramatic play, or a particular piece of furniture, the employer may reject it without assigning any reason for his dissatisfaction." But where the matter involved is not one of "taste, fancy or judgment, but of common experience, such as an ordinary job of mechanical work, or the quality of material, a different rule applies, and in such cases, the law will say that what in reason ought to satisfy a contracting party does satisfy him." (21 Am. & Eng. Ency. of Law,—1st ed.—p. 714, note 2). Thus, in *Wood Reaping and Mowing Machine Co.* v. *Smith,* 50 Mich. 569, it was said: "The cases where the parties provide that the promisor is to be satisfied, or to that effect, are of two classes; and whether the particular case at any time falls within the one or the other must depend on the special circumstances, and the question must be one of construction. In the one class, the right of decision is completely reserved to the promisor and without being liable to disclose reasons or account for his course. * * * The cases of this class are generally such as involve the feelings, taste or sensibility of the promisor, and not those gross considerations of operative fitness or mechanical utility, which are capable of being seen and appreciated by others. * * * In the other class, the promisor is

supposed to undertake that he will act reasonably and fairly, and found his determination on grounds which are just and sensible, and from thence springs a necessary implication that his decision in point of correctness and the adequacy of the grounds of it are open considerations and subject to the judgment of judicial triers." (*Daggett* v. *Johnson*, 49 Vt. 345; *Hartford Sorghum Manf. Co.* v. *Brush*, 43 id. 528; *Duplex Safety Boiler Co.* v. *Garden*, 101 N. Y. 387).

In *Keeler* v. *Clifford*, 165 Ill. 544, where the contract provided that certain work was to be done to the satisfaction of the employer, it was said (p. 549): "Where a contract is required to be done to the satisfaction of one of the parties, the meaning necessarily is, that it must be done in a manner satisfactory to the mind of a reasonable man; the plain construction of the contract in this regard is, that the work was to be completed in accordance with the contract, in such a manner that appellant, as a reasonable man, ought to be satisfied with it. In the nature of things, it would rarely happen that a contract, abandoned or uncompleted by one party, would be fulfilled to the satisfaction of the other party thereto."

But let it be admitted that the plaintiff in error had, under the contract, an option to be exercised in an arbitrary way, and according to its own judgment, either to accept and pay for the machine, or not to accept and pay for it, still the question remains, whether or not the machine was kept and used so long by the club that it was bound to accept and pay for it. The case seems to have been tried upon the theory that, although the machine may have been rejected at one time by the plaintiff in error, yet that plaintiff in error had the right to take back its rejection, and keep the machine. It was left by the instructions to the jury to determine the question of fact, whether plaintiff in error accepted the machine, and, in determining this question, they were authorized by the instructions to take into consideration, in connection with all the other evidence bearing upon the

question, any conduct on the part of the plaintiff in error which, when reasonably considered in the light of all the other evidence in the case bearing upon the question of acceptance, would show an acceptance of the machine, and they were told that, if the conduct of the plaintiff in error, when reasonably considered in the light of all the other evidence bearing upon the question of acceptance, showed an acceptance of the machine by the plaintiff in error, the defendant in error was entitled to a verdict. These instructions are complained of by the plaintiff in error, but without reason, because instructions of the same character were asked by the plaintiff in error. For instance, the court gave for the plaintiff in error, and at its request, an instruction, numbered 3, which said to the jury: "If from the evidence you believe that the club never did promise to purchase and pay for the machine, and did not retain and use the machine for such length of time and under such circumstances as to amount to an election to purchase the machine, then you should find for the defendant." By this instruction the question of fact was left for the determination of the jury, whether plaintiff in error retained and used the machine for such a length of time and under such circumstances as to amount to an election to purchase it. Upon this question of fact the jury found in favor of defendant in error, and the finding is conclusive upon this court.

There was some evidence, introduced by the plaintiff in error, tending to show that the club merely retained and kept possession of the machine as a favor to defendant in error, because it was requested by defendant in error to do so, upon the ground that its rejection and removal would injure the defendant in error in its business, and would be made use of by its business competitors to its injury. Proof was introduced by defendant in error, contradicting this testimony on the part of plaintiff in error. The instructions given left the question to the jury to determine, and they have found the fact in

favor of the defendant in error.   For instance, the fourth instruction given for plaintiff in error, and at its request, was as follows:

"If from the evidence you believe that the club never agreed to purchase the machine in question, but ordered it taken out, and that the plaintiff's agent requested the club to retain the machine in its position and make such use of it as the club might see fit; and stated that such retention should not prejudice the club, or its right to reject the machine, or words to that effect, and, that pursuant to such request and upon such condition only, the club allowed the machine to remain in its position and made use of it, such retention or use would not bind the club to purchase or pay for the machine, and you should find for the defendant."

Some other objections are urged against the instructions given and refused, and some other criticism is made of the action of the trial court in admitting evidence. But all these objections grow out of the general claim, made by plaintiff in error, that, under the terms of this contract, it had an arbitrary option to reject and refuse to pay for the machine if it chose to do so, and whenever it chose to do so, without reference to the question whether there was any good reason or cause for its rejection of the machine, and refusal to pay for it, or not. As we hold, for the reasons above stated, that such is not the correct interpretation of the contract, it is unnecessary further to consider the other objections made, which are not here discussed.   There was no error in the giving or refusal of instructions, or admission or exclusion of evidence, which tended in any way to injure the plaintiff in error in view of the interpretation here given to the agreement, and in view of the manner, in which the case was tried, and submitted to the jury.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*