(No. 14295.—Decree affirmed.)

JOSEPH T. QUINN, Appellant, *vs.* MARY DALY, Appellee.

*Opinion filed December 22, 1921.*

1. SPECIFIC PERFORMANCE—*complainant has burden of proving existence of contract.* In suits for specific performance the burden of proof rests on the complainant, and he must prove the existence of the contract and its terms and must show a complete performance on his part or an offer of such performance.

2. SAME—*contract must be clearly proved or admitted by pleadings.* A contract will not be enforced unless the terms are clear, certain and unambiguous and either admitted by the pleadings or proved with a reasonable degree of certainty.

3. SAME—*an offer must be accepted substantially as made.* In order that there may be a meeting of the minds, which is essential to the formation of a contract, the acceptance of the offer must be substantially as made.

4. SAME—*when acceptance of offer is not complete.* Where a party offers to buy real estate on certain terms stated in a telegram sent at his direction by the owner's agent, and the owner telegraphs the agent that she will accept the buyer's offer but suggests a slight change in payments on the second mortgage, saying she "can agree on that if party is reliable and has other property clear," the contract is not complete, as the language used reserves to the owner the right to pass upon the reliability of the purchaser.

5. SAME—*meaning of word "reliable."* The word "reliable," when used by the owner of real property as a quality necessary in an intended purchaser before a contract can be completed, means trustworthy, worthy of confidence, or capable of being relied upon.

DUNN, J., dissenting.

300—18

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

HARRY D. IRWIN, for appellant.

JOHN R. GEARY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant filed an amended bill in the circuit court of Cook county against appellee, Mary Daly, for the specific performance of an alleged contract for the purchase of certain real estate in that county. A demurrer filed to this amended bill was sustained by the trial court, and this appeal has been taken.

The amended bill alleges that on February 11, 1920, Mary Daly was seized in fee simple and possessed of certain described real estate in Cook county, and that appellant being desirous of purchasing the same, took up the matter with Paul A. Finley, agent for appellee; that at appellant's request Finley communicated by letter with appellee as to the availability of the property for sale, and in reply received a letter signed by appellee, which, omitting date, address and closing reads: "My building at 1101-3 Loyola ave. is for sale for $35,000. Rents about $4300 yr. Two leases expire May 1, 1920, and Oct. 1920. Three expire May, 1921. Mortgage $14,000. Please don't bother the tenant unless you have a buyer who means business. I am writing this on your request for information concerning it. Expect to be home next week." The amended bill further alleges that after receiving said letter the agent continued the negotiations with appellant, and that on February 13, 1920, an agreement was entered into by the parties for the sale of the property to appellant on terms which appear from the letters and telegrams between appellee and her agent, Finley, all of which, it is alleged, constitute the contract relied upon by appellant. These telegrams were made

a part of the amended bill, and, omitting addresses and dates, are as follows:

"*Mrs. Mary Daly*—Think I can sell building thirty-five thousand dollars, eleven thousand cash, ten thousand second mortgage on building good reliable retired Rogers Park man buyer about to close on other building if necessary can get contract signed and come to St. Joseph to see you   Wire me at once my expense.

PAUL A. FINLEY."

"*Paul Finley*—Will take thirty-five thousand for building fourteen thousand cash seven thousand second mortgage monthly payments if the buyer is reliable would like to talk it over with buyer may come to an agreement expect to go back to Chicago end of week other parties interested answer at my expense.

MRS. MARY DALY."

"*Mrs. Mary Daly*—Buyer will pay eleven thousand cash fourteen thousand first mortgage ten thousand second payable five hundred and interest semi-annually due May first Nineteen Hundred twenty-three six months previous to maturity of first mortgage buyer is Mr. Joseph Quinn Rogers Park owns lots of property conscientious and reliable owns lot on North Shore Avenue worth twelve thousand five hundred clear about sold if sold will pay entire equity if preferable will give first mortgage on other property instead of such big second if satisfactory wire your acceptance straight telegraph my expense and will put buyer under contract.

PAUL A. FINLEY."

"*Paul Finley*—Will accept Joseph Quinn's offer of thirty-five thousand for building eleven thousand cash fourteen thousand first mortgage ten thousand second mortgage would like one thousand year on second mortgage if possible can agree on that if party is reliable and has other property clear if other prospective buyer signs first this agreement don't hold good your commission if sold three per cent.        MRS. MARY DALY."

The bill further alleges that all of these telegrams sent by appellee were signed by her and were exhibited to appellant by the agent and that all the telegrams sent to appellee by the agent were at appellant's request, instigation and direction; that upon the receipt of the last telegram above quoted from appellee, appellant paid to Finley, who accepted the same, $1000 to apply on the $11,000 cash payment of the sale, and thereafter tendered to Finley $10,000, being the balance of cash payable, and offered to pay the further

sum of $10,000 and interest in installments of $1000 per year, secured by second mortgage on the property, to become due May 1, 1923, and to pay the balance of the purchase price by assuming an indebtedness of $14,000 secured by mortgage on the property according to the terms of the agreement, and to fully perform his part of the contract whenever appellee would deliver to ·him a good and sufficient deed for the premises; that appellant has always been ready and willing to comply with the terms of the agreement on his part to be performed, and that on March 22, 1920, he applied to appellee and offered to pay her $10,000, being the balance of cash payment due, and to assume the aforesaid indebtedness and give a mortgage for the balance of the purchase price under the agreement.

It is argued by appellant that the property is definitely described in the letter of February 11 from appellee, and that the terms of the sale were substantially agreed upon between the parties in the telegrams that are made a part of the bill, as above quoted, and that appellant is ready and willing to pay the balance of the cash and to comply with all the terms of the agreement; that the terms of the contract as set forth in these telegrams and letter are clear, certain and sufficient and contain all the essential elements necessary to justify a decree of specific performance by a court of equity. Counsel for appellee, on the other hand, argues that the amended bill was rightly dismissed for want of equity because a reading of the telegrams will disclose that no definite offer of sale was made by appellee and that there was no acceptance on her part of the offer of purchase made by appellant, and that even though it be assumed that the offer was a definite one of sale, still the telegrams were not sufficient to constitute a contract, as they do not contain all the elements necessarily included in a contract for the sale of real estate; and further, that the authority to Finley, even if it were definite as to the terms of sale, cannot be enforced because there was no contract

between appellant and appellee, as the authority assumed to be granted to Finley as agent was never exercised by him in writing, and that the receipt by him of the $1000 was a purely voluntary act not authorized in any way by appellee.

In suits for specific performance the general burden of proof rests on the complainant. He must prove not only the existence of the contract and its terms, but must show a complete and full performance on his part or an offer of such performance. A contract will not be enforced unless the terms are clear, certain and unambiguous and either admitted by the pleadings or proven with a reasonable degree of certainty. (*Dreiske* v. *Eisendrath Co.* 214 Ill. 199; *Brach* v. *Matteson,* 298 id. 387.) In order that there may be a meeting of the minds, which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. (6 R. C. L. 608; *Brach* v. *Matteson, supra.*) It would appear from these telegrams between appellee and her agent, before the last one, that she was not entirely satisfied as to whether she wanted to sell the property to appellant on the conditions offered but that she was willing to consider it and expected to return to Chicago shortly for further investigation. The last telegram from the agent to her before her final telegram to him, stated in regard to payment of the $1000 secured by second mortgage that the purchaser wanted to make the payments on this mortgage $500 and interest semi-annually, and that if the offer was satisfactory to appellee to "wire your acceptance straight telegraph." The telegram she sent in return did not contain a straight acceptance but made certain conditions. It stated that she preferred the payments on the second mortgage to be $1000 per year, if possible, and further said, "Can agree on that if party is reliable and has other property clear." This part of the telegram, both taken by itself and taken in connection with the other telegrams introduced in evidence, shows clearly that appellee did not accept without conditions the offer of the appellant;

that she wanted to decide herself whether the appellant was reliable, and, apparently, as to whether he had other property clear. From the authorities set forth in Warvelle on Vendors and Purchasers (vol. 1, 2d ed. sec. 300,) it is clear that they do not agree as to who is to decide whether the title is satisfactory or whether the conditions and terms are satisfactory, but the weight of authority in other jurisdictions seems to be that the person who makes the condition that the title or the party must be satisfactory has himself to pass on that question. The word "reliable" is frequently given a meaning of "trustworthy; worthy of confidence, or one who may be relied on." (New Standard Dict.; Webster's Int. Dict.) It is clear from the telegrams that appellee intended to use the word "reliable," in her last telegram to her agent, with something of this same meaning,—that is, she wanted to assure herself by further investigation that appellant was trustworthy or worthy of confidence and could be relied upon; and we think a reasonable construction of the series of telegrams is that she obviously intended to say that she herself would pass on the question of his reliability and trustworthiness. She wished to satisfy herself that appellant was a reliable man, from whom it would be reasonably safe to accept a second mortgage for $10,000. This being so, it would seem clear that her acceptance of appellant's offer in this telegram was not final, conclusive and binding on her until she herself had passed upon the question whether or not appellant was reliable and worthy of confidence. As the acceptance was not definite it was not binding upon appellee, and therefore the court rightly dismissed the amended bill for specific performance as wanting in equity.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNN, dissenting.