GOVIND LAKSHMAN *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* VINCENT VECCHIONE *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)    No. 80-2967

Opinion filed December 15, 1981.

DiMonte, Baker & Lizak, of Chicago (Eugene A. DiMonte and Gary L. Goldblatt, of counsel), for appellants.

Mass, Miller & Josephson, Ltd., of Chicago (Cary S. Fleischer, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:
Govind Lakshman and his wife Molini Lakshman (plaintiffs) filed in

the circuit court of Cook County an action for declaratory relief with respect to an alleged contract for the sale of real estate. Plaintiffs appeal from a summary judgment entered in favor of defendants Vincent Vecchione, the beneficial owner of a land trust, American National Bank and Trust Company, the trustee, and Russell G. Miller, their attorney (collectively referred to as defendants).

The following issues are presented for review: (1) whether a valid contract existed between the parties; and (2) if a contract is found to exist, whether defendants' damages are limited to $3000 (the amount of plaintiffs' earnest money deposits) as liquidated damages for plaintiffs' breach of said contract.

For the reasons hereinafter set forth, we affirm in part, reverse in part and remand with directions.

On or about June 28, 1979, plaintiffs, through their attorney, Eugene A. DiMonte, submitted to defendants' attorney, Russell G. Miller, a signed offer to purchase certain real estate owned in trust by defendants and located in Lake County, Illinois. The offer, presented on a standard printed legal form, provided for closing five days after title "is shown to be good," at which time plaintiffs would obtain possession of the property. The offer also provided in a stock paragraph printed on the back thereof that upon any breach of the agreement by plaintiffs, defendants would be entitled to all costs and attorney fees incurred as the result of such breach. The offer form granted defendants the option to retain, as liquidated damages, all payments made on the contract, or to pursue any "other remedy given by this agreement or by law or equity."

The offer was mailed to defendants' attorney, Miller, together with a cover letter written by plaintiffs' attorney, DiMonte. The offer itself contained no statement limiting the manner in which it could be accepted. In a postscript to the cover letter, DiMonte requested that Miller "please forward" to DiMonte "a copy of the contract executed by the Trustee."

On July 24, 1979, defendants' attorney replied by letter to plaintiffs' attorney, informing him that the contract had been accepted without change by defendants and executed by the trustee. In this letter plaintiffs' attorney was also advised that a "payout letter" and "closing statement" were being forwarded to him and that at closing the plaintiffs would receive various documents including a copy of the executed sales contract.

On July 25, 1979, plaintiffs' attorney responded, by letter, stating that before closing could take place certain title exceptions would have to be cleared, either in the form of a waiver from the title insurance company or in the form of a written guarantee from defendants that the exceptions would be waived "within a reasonable time."

In a letter dated July 31, 1979, defendants' attorney replied that a certain title exception could not be waived.[1] On August 20 plaintiffs' attorney wrote to defendants' attorney stating that plaintiffs "would like to withdraw from the transaction" and requesting return of the earnest money deposit. The record indicates no further negotiations, nor any further demand by plaintiffs for a copy of the executed sales contract.

On January 9, 1980, plaintiffs filed a complaint requesting a declaration that a valid contract did not exist between the parties and further that plaintiffs were entitled to a refund of their $3000 earnest money deposit. On March 17 defendants counterclaimed, seeking a declaration that a valid contract did exist and that defendants were entitled to specific performance of the contract plus costs and attorney fees, or in the alternative, actual damages for breach of contract plus costs and attorney fees.

On June 13 defendants filed a motion for summary judgment on their counterclaim. On July 10 plaintiffs filed a cross-motion for summary judgment on their complaint. On September 9, 1980, the trial court denied plaintiffs' motion for summary judgment and denied that part of defendants' motion which requested specific performance or actual damages, costs and attorney fees. The trial court found that a valid contract existed between the parties and awarded defendants the $3000 earnest money deposit as liquidated damages for plaintiffs' breach of such contract.

Plaintiffs filed a motion for reconsideration of the trial court's decision, which motion was denied on October 16, 1980. They appeal from both the trial court's September 9, 1980, decision and the trial court's order of October 16 denying reconsideration of that decision. Defendants cross-appeal from that part of the trial court's decision denying them specific performance on the contract, or actual damages for breach of contract, costs and attorney fees.

I

The first issue we consider is whether a valid contract existed prior to plaintiffs' attempt to revoke their offer to purchase defendants' property. Plaintiffs argue that it was the intent of the parties that neither would be bound until acceptance, execution and *actual delivery* of the formal agreement.

It is elementary that for a contract to exist there must be an offer and an acceptance. (*Zeller v. First National Bank & Trust Co.* (1979), 79 Ill.

---

[1] The title exception concerned the location of the subject property in a State designated flood plain and the necessity of obtaining a permit prior to beginning any construction in the area.

App. 3d 170, 172, 398 N.E.2d 148; *O'Keefe v. Lee Calan Imports, Inc.* (1970), 128 Ill. App. 2d 410, 262 N.E.2d 758.) The general rule is that the acceptance of the offer may be made in any reasonable manner, provided that such acceptance is communicated to the offeror. 12 Ill. L. & Prac. *Contracts* §38 (1955); 17 Am. Jur. 2d *Contracts* §44 (1964).

In the instant case the record indicates that plaintiffs' offer was accepted by defendants, and the fact of such acceptance was communicated by letter to plaintiffs' attorney. A copy of the executed agreement was not physically returned to plaintiffs.

Plaintiffs argue that delivery of a written contract is "indispensible" to its binding effect. In support of this proposition they cite the case of *Jordan v. Davis* (1883), 108 Ill. 336. In *Jordan* the narrow issue was whether a writing, purporting to be a lease from one party to another, was "delivered" so as to become binding on the parties. The Illinois Supreme Court held that "[d]elivery is a question of *intent*, and it depends whether the parties at the time meant it to be a delivery to take effect presently." (Emphasis added.) 108 Ill. 336, 341.

The intent of the parties is crucial to the determination of whether a contract came into existence. In *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 415 N.E.2d 668, the court stated:

> "* * * it has been held that the parties, upon agreeing to all of the essential terms of a contract, have entered into a binding and enforceable contract *though no formal contract was signed or delivered* by one of the parties. [Citations.] However, *if the clear intent of the parties is that neither will be legally bound until the execution and delivery of a formal agreement, then no contract comes into existence until such execution and delivery.* [Citations.]" (Emphasis added.)

In the case at bar plaintiffs' attorney transmitted to defendants' attorney a signed offer to purchase defendants' property. A letter was enclosed with the offer requesting in a postscript: "Please forward a copy of the contract executed by the Trustee." This statement does not, in our opinion, limit the manner in which defendants could accept plaintiffs' offer. Reasonably construed, the words "please forward" do not require defendants to actually physically deliver the formal agreement to plaintiffs as a condition precedent to the formation of a valid contract.

■■ Based on the record we conclude that the trial court was correct in determining that once the fact of defendants' acceptance was communicated to plaintiffs by defendants' attorney, a valid contract existed. Since it appears that no material issues of fact were presented as to the contract formation, we hold that the trial court did not err in granting summary judgment on this issue in favor of defendants.

## II

The second issue presented is whether defendants are limited to $3000 as liquidated damages for plaintiffs' breach of contract. Defendants argue that by the terms of the contract they are entitled to specific performance of the contract, or, in the alternative, to actual money damages, as well as costs and attorney's fees incurred as a result of their attempt to enforce the contract.

The contract contained the following stock provisions relating to defendants' remedies in case of any default by plaintiffs:

"11. *In case of the failure of Purchaser* to make any of the payments, or any part thereof, or *perform any of Purchaser's covenants hereunder, this agreement shall, at the option of Seller, be forfeited and determined, and Purchaser shall forfeit all payments made on this agreement, and such payments shall be retained by Seller in full satisfaction and as liquidated damages by Seller sustained*, and in such event Seller shall have the right to re-enter and take possession of the premises aforesaid.

12. In the event this agreement shall be declared null and void by Seller on account of any default, breach or violation by Purchaser in any of the provisions hereof, this agreement shall be null and void and be so conclusively determined by the filing by Seller of a written declaration of forfeiture hereof in the Recorder's office of said County.

❋ ❋ ❋

14. *Purchaser shall pay to Seller all costs and expenses, including attorney's fees, incurred by Seller in any action or proceeding to which Seller may be made a party by reason of being a party to this agreement, and Purchaser will pay to Seller all costs and expenses, including attorney's fees, incurred by Seller in enforcing any of the covenants and provisions of this agreement* and incurred in any action brought by Seller against Purchaser on account of the provisions hereof, and all such costs, expenses and attorney's fees may be included in and form a part of any judgment entered in any proceeding brought by Seller against Purchaser on or under this agreement.

15. *The remedy of forfeiture herein given to Seller shall not be exclusive of any other remedy, but Seller shall, in case of default or breach,* or for any other reason herein contained, *have every other remedy given by this agreement or by law or equity,* and shall have the right to maintain and prosecute any and every such remedy, contemporaneously or otherwise, with the exercise of the right of forefeiture, or any other right herein given." (Emphasis added.)

It is clear from the terms of paragraph 11 of the contract that it is

defendants' *option* to retain the $3000 earnest money deposit or to pursue any other legal or equitable remedy for breach of contract.[2]

■■ Where, as in the instant case, a contract provides for retention of the earnest money by the seller, at his option, in the event of a breach by the purchaser, the seller is not entitled to additional recovery if he exercises the option. (*Gryb v. Benson* (1980), 84 Ill. App. 3d 710, 712, 406 N.E.2d 124; *Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 236, 336 N.E.2d 491.) This rule, however, does not apply when the sellers have such an option and choose *not* to exercise it. 84 Ill. App. 3d 710, 712.

In the instant case defendants opted not to retain the earnest money as liquidated damages but instead sought specific performance of the contract, or in the alternative, actual damages for breach of contract. Defendants also sought costs and attorney fees pursuant to paragraph 14 of the agreement. The trial court restricted defendants' recovery to the $3000 earnest money deposit as liquidated damages.[3]

Based on the record we must conclude that the trial court erred in limiting Sellers' award to the $3000 earnest money deposit as liquidated damages.

■■ Under the clear language of the contract, it was defendants' prerogative to sue for actual damages, or to seek any other remedy, including specific performance. A grant of specific performance, however, is not a matter of absolute right and is within the discretion of the trial court. (*Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515; *Bliss v. Rhodes* (1978), 66 Ill. App. 3d 895, 384 N.E.2d 512.) As a general rule specific performance will not be granted where there is an adequate remedy at law. *In re Estate of Johnson* (1976), 39 Ill. App. 3d 246, 253, 350 N.E.2d 310.

In the instant case actual damages would be an adequate remedy at law. An award of actual damages amounting to any deficiency between the fair market value of the real estate on the date of the breach and the sales price contracted for by plaintiffs, including reasonable costs and attorney fees, will serve to place defendants in the position in which they

---

[2] At no time did the plaintiffs argue that the terms of the contract were unconscionable, or that they were deprived of an opportunity to change any of the terms before submitting their offer.

[3] The court's order provided:

"1. Plaintiffs motion for summary judgment is denied;

2. Court enters declaratory judgment that a good and valid contract exists between the parties;

3. Judgment is entered in favor of American National Bank, as trustee against plaintiffs-counterdefendants in the sum of $3000, as liquidated damages, said sum being satisfied *instanter* from earnest money deposit of $3000;

4. Defendants motion for summary judgment is denied as to specific performance, attorney's fees and costs and is granted *only* as to relief stated in paragraphs 2 and 3 above."

would have been had the contract been performed.[4] (See *Gryb v. Benson* (1980), 84 Ill. App. 3d 710, 712, 406 N.E.2d 124; *Kemp v. Gannett* (1977), 50 Ill. App. 3d 429, 431, 365 N.E.2d 1112; *Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 556, 351 N.E.2d 630; *Genslinger v. New Illinois Athletic Club* (1930), 339 Ill. 426, 443, 171 N.E. 514.) We therefore concur with the trial court's refusal to decree specific performance.

For the foregoing reasons we affirm that part of the trial court's judgment which declared that a valid contract existed between the parties. We affirm also the trial court's denial to defendants of specific performance. We reverse that part of the judgment which limited defendants to $3000 as liquidated damages, and we reverse also the trial court's denial to defendants of attorney fees and costs.

The case is remanded with directions to determine the amount of actual damages and reasonable attorney fees and costs incurred by defendants as a result of plaintiffs' breach of the contract.

Affirmed in part; reversed in part; remanded with directions.

STAMOS and DOWNING, JJ., concur.

---

[4] The resale price, if within a reasonable time and at the highest price obtainable after the breach, is evidence of the market value on the date of the breach. (*Gryb v. Benson* (1980), 84 Ill. App. 3d 710, 712.) As a general rule the damages recoverable in any action for breach of contract "are limited to those which were reasonably foreseeable and were within the contemplation of the parties at the time the contract was executed." *Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 113, 368 N.E.2d 671.