ERIC FORMAN, Plaintiff-Appellee, *v.* ART BENSON, Defendant-Appellant.

Second District   No. 82—57

Opinion filed March 1, 1983.—Rehearing denied March 31, 1983.

LINDBERG, J., dissenting.

James E. Dixon, of Dixon, for appellant.

Gary R. Gehlbach, of Dixon, Morin, Ehrmann & Gehlbach, Ltd., of Dixon, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Art Benson, appeals from an order of the circuit court of Lee County granting plaintiff Eric Forman specific performance of an installment contract to purchase commercial real estate owned by defendant. The following issues are raised on appeal: (1) Whether the trial court erred in applying a standard of reasonableness to the defendant's approval of plaintiff's credit report; (2) whether the trial court's finding that defendant accepted the offer to purchase was against the manifest weight of the evidence, and (3) whether specific performance was properly granted.

On March 23, 1981, the plaintiff, a chiropractor, executed an offer to purchase certain real estate in Dixon, Illinois, owned by the defendant, an electrician and a refrigeration and heating repairman. The offer was communicated the same day to the defendant at a conference attended by the defendant and three realtors. One of the realtors was Ken Burnell, with whom the defendant had listed the property. The other realtors attending the conference were Cheryl Blackorby and Bill Blackorby, spouses who are partners in another real estate firm. The plaintiff was a client of the Blackorbys, who had been assisting him for the previous several months in his search for a commercial building suitable for use as a chiropractic clinic.

The conference at which the offer was communicated took place in the office of the realtor, Ken Burnell. The terms of the offer were explained to defendant by Cheryl Blackorby. The offer proposed to purchase the property for $125,000, to be paid over a 10-year period. Payments were to be based upon a 30-year amortization rate at 9% interest. Plaintiff was to take possession of the property on September 1, 1981.

Before signing the agreement, defendant expressed concern over the plaintiff's credit worthiness, stating that he "didn't know him from a load of hay." Plaintiff's credit was of special significance to the defendant, since defendant was essentially "acting as a loan company" for plaintiff's benefit. As an assurance to the defendant, Mrs. Blackorby suggested that the contract be made subject to a favorable credit report. This suggestion eased defendant's feelings about the credit, and Ken Burnell thereafter added the following handwritten statement to the offer:

"Subject to seller's approving buyer's credit report, oral on March 24, 1981, and written when ready."

The meaning of this statement was not explained in any detail at the time it was inserted by Mr. Burnell. However, it was uncontroverted that the clause was inserted for defendant's benefit. The contract was subsequently signed by defendant, and $1,000 was deposited by the plaintiff as earnest money.

Ken Burnell, defendant's realtor, testified on behalf of plaintiff Forman. Mr. Burnell stated that defendant indicated to him that he would approve the contract if plaintiff had a good credit report. Mrs. Blackorby also indicated that defendant said he would accept the contract if the credit report was favorable. However, it was defendant's understanding and belief that he would be given time to examine the credit documents, evaluate them and make a decision.

The day after the offer and acceptance was executed, Mrs. Black-

orby telephoned the defendant and advised him that an excellent oral credit report had been received. She further told defendant that a written report would be ready in a few days. Defendant sounded agreeable to the oral report and stated he would pick up the written report when it arrived. On Friday, March 27, 1981, Mrs. Blackorby received the written credit report, as well as a personal financial statement prepared by the plaintiff and a letter from Dixon National Bank stating it would lend $35,000 to plaintiff. Mrs. Blackorby gave these documents to defendant that day, explaining the credit report in detail. Defendant stated the report "looks real good," and that he would have his attorney review it and begin the title work on the property.

Between Friday, March 27, 1981, and May 14, 1981, the plaintiff and defendant discussed the pending sale on three occasions. Those occasions took place in the latter part of April, at which time additional financial material, including copies of income tax returns, were furnished at the defendant's request. During those conversations the parties also discussed increases in the purchase price and the interest rate on the contract, as well as retention by the seller of certain personal property on the premises. Plaintiff testified that the seller wanted to raise the purchase price and interest rate, while the defendant testified that, prior to his rejection of the contract he did mention a different price but not in terms of an ultimatum.

On May 14, 1981, the defendant, through the office of Ken Burnell, furnished a written statement rejecting plaintiff's credit and directing the realtor to refund the $1,000 deposit. Plaintiff attempted to discuss the matter further with the defendant, apparently making another offer as an inducement to complete the contract without litigation. Although defendant went to plaintiff's office to discuss another offer, no other offer was accepted by him. In July of 1981 the plaintiff brought this action seeking specific performance of the agreement. On September 1, 1981, plaintiff was ready and able to pay the balance of the down payment, complete the other obligations required by the installment agreement and take possession of the premises. The defendant denied the demand for possession under the terms of the agreement.

The defendant testified that he rejected the credit information because the plaintiff had liabilities of $80,000 and liquid assets of only $24,000. When defendant sought additional information, he was furnished with a corporate tax return showing a $2,000 loss for the tax year. Based on this information, defendant believed the plaintiff was "just breaking even." He had asked for the additional information because he believed the information furnished in the credit bureau re-

port was not very significant. Defendant has had no prior experience as a bank or loan officer.

Thomas Schmidt, loan officer with a local savings and loan association, testified on behalf of the plaintiff. His testimony was uncontroverted to the effect that the plaintiff had an excellent credit rating. Based upon the credit application and credit report of the plaintiff, the savings and loan association would not have hesitated to extend credit to the plaintiff, although not under the terms of this particular contract.

The trial court found that defendant was held to a standard of reasonableness in his rejection of the contract on the basis of plaintiff's credit report, and found that defendant's rejection here was unreasonable. The court also found that defendant attempted to renegotiate the contract prior to his rejection of plaintiff's offer and that this action waived any objection which defendant might reasonably have had to plaintiff's credit-worthiness. Finally, waiver was also found in defendant's delay of over 30 days "before giving notice of his intention to rely upon the credit clause in question." The court found in favor of the plaintiff and entered a decree for specific performance. The instant appeal followed.

Defendant first argues that approval of the buyer's credit worthiness was intended to be a matter of personal satisfaction on the part of the seller and was not subject to a standard of reasonableness, as the plaintiff claims and the trial court held.

We have discovered no case dealing with the interpretation of the specific clause in question. However, there is some Illinois case law regarding the interpretation of satisfaction clauses in general. In *Reeves & Co. v. Chandler* (1903), 113 Ill. App. 167, 170, the court found that satisfaction clauses generally fall into one of two classes. In one class, the decision as to whether a party is satisfied is completely reserved to the party for whose benefit the clause is inserted, and the reasons for his decision may not be inquired into and overhauled by either the other party or the courts. Cases falling into this class generally involve matters which are dependent upon the feelings, taste, or judgment of the party making the decision. (*Reeves*; *Union League Club v. Blymyer Ice Machine Co.* (1903), 204 Ill. 117, 68 N.E. 409.) The second class of cases are those in which the party to be satisfied is to base his determination on grounds which are just and reasonable. (*Reeves.*) These cases generally involve matters which are capable of objective evaluation, or which involve considerations of operative fitness or mechanical utility. (*Reeves*; *Union League Club.*) Matters of financial concern generally fall into this second category of

cases. (See, *e.g.*, *Kadner v. Shields* (1971), 20 Cal. App. 3d 251, 97 Cal Rptr. 742; *Guntert v. City of Stockton* (1974), 43 Cal. App. 3d 203, 117 Cal. Rptr. 601; *Kagel v. First Commonwealth Co.* (N.D. Cal. 1973), 409 F. Supp. 1396.) The adequacy of the grounds of a determination in this class are open to judicial scrutiny and are judged by a reasonable man standard. *Reeves*; *Wood Machine Co. v. Smith* (1883), 50 Mich. 565, 15 N.W. 906.

However, the *Reeves* case also made it clear that the parties may agree to a reservation in one party of the absolute and unqualified freedom of choice on a matter not involving fancy, taste, or whim. (113 Ill. App. 167, 170.) Quoting from *Wood Machine Co. v. Smith* (1883), 50 Mich. 565, 15 N.W. 906, the court stated:

> " 'It sometimes happens that the right is fully reserved where it is the chief ground, if not the only one, that the party is determined to reserve an unqualified option, and is not willing to leave his freedom of choice exposed to any contention or subject to any contingency. He will not enter into any bargain except upon the condition of reserving the power to do what others might regard as unreasonable.' " (113 Ill. App. 167, 170-71.)

Applying this reasoning, the court in *Reeves* found that a satisfaction clause regarding certain machinery—a matter which would normally be capable of objective evaluation—was intended to allow the purchaser of the machinery to exercise his judgment in accepting or rejecting the machinery:

> "It is apparent from the grammatical construction and arrangement of the clause in question that the words 'and satisfactory' were added thereto after the preceding portion was written and as a concession to defendant in error. It may be reasonably inferred that he was determined that no opportunity should be given plaintiff in error to force the outfit upon him if he finally concluded not to take it. The words referred to were undoubtedly added to the clause at his request or suggestion and for the purpose of inducing him to sign the order." (113 Ill. App. 167, 171.)

Thus, it is apparent that under *Reeves* the fact that the clause was added as a concession or inducement to one of the parties is significant in determining whether the reasonableness standard should be applied.

In *Quinn v. Daly* (1921), 300 Ill. 273, 133 N.E. 290, a provision similar to the one here in question was interpreted by the Illinois Supreme Court as providing for a decision based on personal judgment. In that case, the seller in a contract sale for realty stated that she

would agree to the terms of the contract " 'if party is reliable and has other property clear \*\*\*.' " (300 Ill. 273, 277, 133 N.E. 290, 291.) The court held that this statement was intended to reserve in the seller the right to pass on the question of the buyer's reliability and trustworthiness. 300 Ill. 273, 278, 133 N.E. 290, 291.

In *Stribling v. Ailion* (1967), 223 Ga. 662, 157 S.E.2d 427, the Supreme Court of Georgia also interpreted a similar provision in a real estate sales contract as a matter of personal opinion and judgment. In that case, the vendor included the following stipulation in the contract:

> "Seller \*\*\* reserves the right to run a credit investigation on purchaser and if in seller's opinion purchaser's credit is not sufficient, then the terms of this contract are null and void." (223 Ga. 662, 663, 157 S.E. 2d 427, 428.)

The court held that the stipulation reserved the right in the seller not only to run a credit investigation, but also to determine in his sole discretion whether the buyer's credit was to his satisfaction. 223 Ga. 662, 663, 157 S.E. 2d 427, 428.

Although these several cases seem to stand for the proposition that personal judgment is involved when the evaluation of a credit rating is at issue, a different conclusion was reached in *Weisz Trucking Co. v. Emil R. Wohl Construction* (1970), 13 Cal. App. 3d 256, 91 Cal. Rptr. 489. In that case a contract between a contractor and a subcontractor provided that "[t]he subcontractor shall furnish, if requested, a corporate surety contract bond \*\*\* written \*\*\* by a company acceptable to the contractor \*\*\*." (13 Cal. App. 3d 256, 258, 91 Cal. Rptr. 489, 490.) The subcontractor thereafter submitted a surety bond in the amount of $168,000 which was written by a company with a Treasury rating of only $61,000. The contractor rejected the bond, stating that it wanted a company with a Treasury rating of $500,000. The contractor cancelled the contract and the subcontractors sued for breach. The appellate court held that the sufficiency of the performance bond should be determined by the application of an objective test of reasonableness. In reaching this conclusion, the court relied upon numerous decisions dealing with satisfaction clauses in which it was generally found that "where the contract calls for satisfaction as to commercial value or quality or sufficiency which can be evaluated objectively, the standard of a reasonable person should be used in determining whether or not satisfaction has been received." 13 Cal. App. 3d 256, 262, 91 Cal. Rptr. 489, 493.

■■ It seems clear from the foregoing cases that a reasonableness standard is favored by the law when the contract concerns matters

capable of objective evaluation. However, where the circumstances are such that it is clear the provision was added as a personal concession to one of the contracting parties, the subjective, rather than the objective standard, should be applied. *Reeves & Co. v. Chandler* (1903), 113 Ill. App. 167.

■ In the present case, it is uncontroverted that the clause in question was inserted as a concession to the defendant and as an inducement to him to sign the contract, which he subsequently did. Ken Burnell testified that the addition of the provision indeed eased defendant's mind about the plaintiff's credit worthiness. In light of the fact that the relationship between the parties was to endure over a 10-year period of time, we think it is a reasonable construction of the provision that it was intended to allow defendant the freedom of making a personal and subjective evaluation of plaintiff's credit worthiness. We, therefore, conclude that the trial court erred in applying a reasonableness standard to the instant case.

■ The personal judgment standard, however, does not allow the defendant to exercise unbridled discretion in rejecting plaintiff's credit, but rather is subject to the requirement of good faith. (*Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 422 N.E.2d 949; *Kadner v. Shields* (1971), 20 Cal. App. 3d 251, 97 Cal. Rptr. 742; *Mattei v. Hopper* (1958), 51 Cal. 2d 119, 330 P.2d 625.) In the instant case the trial court made no specific finding whether defendant Benson rejected plaintiff's credit in good faith. However, the trial court did find that between the time the contract was executed and the time the offer was rejected, defendant attempted to renegotiate the purchase price of the building as well as the interest rate. Defendant has challenged this finding on appeal, claiming it was against the manifest weight of the evidence. We disagree. Both plaintiff and defendant testified that an increased purchase price was discussed. Thus, the trial court's finding in this regard was supported by the record and was not against the manifest weight of the evidence. Further, we hold that while defendant may have had a basis in his personal judgment for rejecting plaintiff's credit (*i.e.*, outstanding debts and a $2,000 loss reflected in an income tax return), his attempted renegotiation demonstrates that his rejection was based on reasons other than plaintiff's credit rating and was, therefore, in bad faith.

■ The defendant next asserts that the trial court's finding that defendant accepted plaintiff's offer to purchase is against the manifest weight of the evidence. In addition to the finding of an attempted renegotiation by the defendant, defendant has challenged two other findings of the trial court: (1) that defendant initially approved the

credit rating and; (2) that defendant waived his right to reject the offer by waiting more than 30 days.

■ Because we believe defendant's attempted renegotiation demonstrated that his rejection was in bad faith, we will not discuss the two other findings of the court which are here challenged by defendant. We do note, however, that the court's finding of waiver was based not only on the 30-plus day delay prior to his rejection, but also on defendant's attempted renegotiation. We agree with the trial court that this conduct, in addition to demonstrating bad faith, also constitutes a waiver of defendant's right to reject the credit information. A waiver is an intentional relinquishment of a known right. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.) To constitute a waiver the words or conduct of a party must be inconsistent with his intention to rely on the requirements of the contract. (75 Ill. App. 3d 298, 304, 393 N.E.2d 1223, 1229.) Here, the trial court found that the defendant's attempt to renegotiate the contract at an increased purchase price and interest rate was "logically inconsistent" with any alleged disapproval of plaintiff's credit rating. Defendant has not challenged this finding on appeal. We, therefore, agree with the trial court, and conclude that its finding of waiver in this regard was not against the manifest weight of the evidence.

■ Defendant's final contention is that specific performance was not properly granted since long-term supervision would be required to enforce the terms of the contract.

The remedy of specific performance is not a matter of absolute right but is within the discretion of the court. (*Lakshman v. Vecchione* (1981), 102 Ill. App. 3d 629, 430 N.E.2d 199; *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515.) However, where a contract for the sale of real estate has been fairly entered into without any fraud or misrepresentation, specific performance will be granted to either the buyer or the seller. *Bissett; Hunter v. DeMay* (1970), 124 Ill. App. 2d 429, 259 N.E.2d 291.

■ The contract in the present case is one for the sale of real estate. The trial court found the contract was entered into "fairly and with a complete understanding on both sides." This finding is not challenged on appeal. Although performance of this contract is to endure over a 10-year period, we do not view this fact alone as requiring a denial of specific performance, as defendant contends. The terms of the contract are clear, and performance by the parties here would not require the same detailed and complex court supervision as would be required in building and construction contracts. (See *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515.) Under all of

the circumstances, we cannot say as a matter of law that the trial court abused its discretion in granting specific performance to the plaintiff.

For the foregoing reasons, the decree of the circuit court of Lee County granting specific performance to the plaintiff is affirmed.

Affirmed.

VAN DEUSEN, J., concurs.

JUSTICE LINDBERG, dissenting:

I am compelled to disagree with the respected trial court and my colleagues in the majority. I believe the parties, the trial court and the majority have proceeded far deeper into the intricacies of contract law than the facts of this cause permit. I do not believe questions of reasonableness or good faith are involved where the issue is whether the seller accepted and assented to the contract.

The cases relied upon by the trial court are inapposite. In *Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 422 N.E.2d 949, the contract specifically used the word "reasonable" to establish the standard of conduct of the buyer in obtaining a mortgage. Not so here. *Kovacs v. Krol* (1944), 385 Ill. 593, 53 N.E.2d 456, is similarly unavailing where the buyer's inability to perform was the direct result of the failure of the seller to procure a title report which was an expressly imposed obligation of the seller. Both cases are distinguishable from the case at bar where the seller's acceptance was conditional, and no standards were imposed by the contract on his exercise of his right to accept or reject.

The addendum to the contract "Subject to seller approving buyer's credit report, oral on March 24, 1981, written when ready" was indisputably a condition to the seller's acceptance of the buyer's offer. It is an elementary rule of contract law that a condition precedent must be performed before contractual liability arises. (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620, and cases cited therein.) The seller's acceptance of the offer must be unequivocal. (*Milani v. Proesel* (1958), 15 Ill. 2d 423.) The seller never approved the buyer's credit report, and it is not suggested by the parties or the trial court that the seller performed this necessary act. Nor is it urged that his silence between March 23 and May 14 (except when he was solicited by the buyer two or three times in April and May) constituted an acceptance.

Further, the requirement of seller's approval of buyer's credit re-

port did not limit the time which the seller had to accept or reject the credit report. Where no time period for acceptance is stated the offeree has a reasonable time within which to accept. (See generally 17 Am. Jur. 2d *Contracts* sec. 56 (1964).) Buyer testified he understood he was to present seller a credit report and a letter from the bank approving a potential loan. Buyer also acknowledged that three or four weeks after March 23 or March 27 he approached the seller to ascertain the reason for the delay. According to the buyer, seller asked for more evidence of buyer's "financial capabilities," at which time buyer showed seller his corporate tax return for 1979, his 1980 personal income tax return and he prepared a financial statement for the previous 28 months. Thus, it appears that the parties understood that seller's approval of buyer's credit report was not limited to the report of the credit bureau obtained March 27 but embraced other evidence. This included a bank loan approval, personal and corporate income tax returns, and a financial statement. The tax returns and financial statement were not presented to seller until three or four weeks after March 23 or March 27.

Buyer's testimony established that the initial credit report had not satisfied seller and buyer provided the further information referred to. It is submitted that this is hardly evidence of seller's bad faith as concluded by the majority. More importantly it demonstrates that the delay between March 27, the date the seller received the credit report, and May 14 was not unreasonable. The seller continued to try to satisfy himself of buyer's credit for several weeks after March 27, perhaps as many as four weeks, according to the buyer. In view of the fact that nowhere in the contract is there a 30-day provision relating to acceptance, and the fact that the seller was providing the bulk of the financing of the purchase and the fact that the closing was not to occur until September 1, 1981, the additional three weeks between late April and May 14 was not an unreasonable amount of time for the seller to consider his decision to accept or reject the contract.

I conclude, contrary to the conclusions of the trial court, that there was no 30-day period for acceptance or rejection of the contract; seller had a reasonable time to accept or reject the buyer's offer and made a timely rejection on the 14th; and, that neither the contract nor case law imposed upon the seller a standard of reasonableness in accepting or rejecting the contract. As to an implied agreement in every contract that the parties act in good faith I simply respond that there was no contract. But, also, the majority's conclusion that the seller lacked good faith by renegotiating other terms of the contract is not supported by the evidence. The buyer ap-

proached the seller and offered more documents regarding his "financial capabilities." During these meetings initiated by the buyer, seller indicated he might accept the contract at the original asking price of $135,000 and a half to one percent increase in the interest rate. Even if there was a contract, I would not hold that such discussions, where the seller has never indicated satisfaction with the buyer's credit, constitute bad faith.

I would reverse the judgment of the circuit court of Lee County.